Supple v. The Iowa State Insurance Company.

2. ———: proof of crime: civil action.

REVERSED.

---

### SUPPLE v. THE IOWA STATE INSURANCE COMPANY.

1. **Insurance**: ANNULLING POLICY: NOTICE. The failure of the insured to pay the assessments on a premium note, given in consideration of the insurance and payable upon assessments made by the company, would not *ipso facto* operate to annul the policy. Notice of the exercise of the option by the company to terminate the contract of insurance must be given.

2. ———: REVIVAL: INDORSEMENT OF CONSENT. Where by the terms of the policy the execution of a mortgage upon the property rendered the policy absolutely void, and the revival, by indorsement of consent, was at the option of the company, an offer to indorse consent, upon certain conditions, which were not complied with by the insured, would not revive the policy, or render the company liable for loss. ADAMS, J., *dissenting*.

Supple v. The Iowa State Insurance Company.

3. ———: EVIDENCE: PRACTICE. Evidence considered, and held properly admissible in rebuttal; and that the objection on the ground of the want of a reply could not be first urged in the Supreme Court.

*Appeal from Dubuque District Court.*

WEDNESDAY, APRIL 5.

ACTION upon a policy of insurance. There was a verdict and judgment in the District Court for plaintiff. Defendant appeals.

*Craig, Collier & Craig*, for appellant.

*Shiras, Van Duzee & Henderson*, for appellee.

BECK, J.—I. The plaintiff executed a premium note to defendant in consideration of the insurance, which, according to the conditions of the policy, was payable upon assessments made by the directors of defendant. The evidence tends to show that certain assessments thus made, of which plaintiff had notice, were not paid. Another condition of the policy is as follows:

1. INSURANCE: annulling policy: notice.

"SEC. 2. Whenever any assessment shall have been declared by the company, and notice thereof forwarded to the insured by mail or otherwise, and the insured shall, for the space of thirty days after such notice, refuse or neglect to pay the same, the directors may sue for and recover the whole amount of said premium note or notes, and at their option annul the policy of insurance."

The District Court instructed the jury that defendant was not authorized to annul the policy except upon notice given to plaintiff, and that a resolution or other action of the defendant's directors, done in the exercise of the option to cancel the policy for non-payment of assessments on the premium note, would not terminate the contract, unless notice thereof was given to plaintiff. The instructions presenting this rule are complained of by defendant as erroneous. We think they

are correct. The default of plaintiff in the payment of the assessments did not *ipso facto* operate to annul the policy. It simply constituted the ground upon which defendant was authorized to declare the contract terminated. It is a familiar rule of the law, that a party to a contract, authorized to rescind it, is required to give notice to the other party, or in some other way make known his action upon exercising his power to terminate the contract. The rule is based upon the plainest reasons. See *Armstrong v. Pierson*, 5 Iowa, 318, and *Mullin v. Bloomer*, 11 Iowa, 361.

*Coles v. Iowa State Insurance Company*, 18 Iowa, 425, and *Greeley v. The Same*, 50 Iowa, 86, are not in conflict with this conclusion.

II. There was evidence tending to show that after the policy was issued, the assured executed a mortgage upon the property insured. A condition of the policy provides, that if, "during the life of the policy, an incumbrance should fall or be executed upon the property insured, this policy shall be void until the consent of the company is obtained thereto, and indorsed on the policy by the secretary." There was evidence tending to show that after the execution of the mortgage, it was sent by the mortgagees to defendant, with a request that consent thereto be indorsed upon it. This request was not complied with, and no assent to the mortgage was given by defendant, but it was returned by the secretary with a statement that two assessments were due on plaintiff's premium note, upon the payment of which the company would "transfer" the policy to the mortgagees "in case of loss." No payment of the assessments was made, and the secretary testifies that no further communication was had upon the subject between defendant and the mortgagees, or the assured. The court, as applicable to this branch of the case, gave the following instruction:

*2.*————*: revival: indorsement of consent.*

"No. 11. If you find from the evidence in this case, that upon the execution of this mortgage, John Bell & Co. gave notice of its execution to the defendant, and sent the policy

to the company, so that the company had the opportunity to indorse their consent thereto on the same, or if consent was not given to cancel the policy, and you find that the company did not cancel the policy, but returned the same to John Bell & Co., with directions about the payment of the premiums claimed to be due, and did not then, or within a reasonable time thereafter, notify plaintiff that the company did not consent to the execution of the mortgage, then you would be justified in finding that the company consented to the execution of the mortgage, and waived any right of objection thereto, even though such consent might not be indorsed upon the policy by the secretary. If the company did, in fact, consent to the execution of the mortgage, it cannot now avail itself of the mere fact that such consent is not indorsed upon the policy."

This instruction, in our opinion, is erroneous. Under the terms of the condition just quoted, the policy became void upon the execution of the mortgage. Assent to the mortgage indorsed upon the policy by defendant would revive it. The instruction in effect holds that, notwithstanding the mortgage, the policy was binding until canceled by defendant, and that an opportunity to express consent to the mortgage, and its return without a subsequent notice given by defendant that it would not consent to the mortgage authorized the jury to find that consent was given, and objection on account of the mortgage was waived.

The policy became absolutely void upon the execution of the mortgage. The defendant was not required to do any act in order to avoid it. But by indorsing consent to the mortgage upon the policy, the company would revive the contract. This act of revival rested in the option of defendant. Now, surely, the failure or refusal of defendant to give consent, or a proposition to give it upon conditions that were not performed, cannot be regarded as evidence that assent was given, or objection on account of the mortgage was waived. It cannot be claimed that defendant, while relying upon the

forfeiture of the policy, and refusing to revive it, by the very act that indicated such a purpose, did revive it, or waive objection to the mortgage. Nor can it be claimed that an opportunity to assent to the mortgage, without giving assent thereto, would have the same effect. It would, indeed, be a very hard rule to make the acts of the defendant, which showed a purpose not to assent to the mortgage, the ground upon which the assent could be presumed, or a waiver of objection to the mortgage could be inferred. *Nedrow v. Farmers' Insurance Company*, 43 Iowa, 24, is not in conflict with the views just expressed.

When the defendant was notified of the loss, it based its refusal to pay on the sole ground of the non-payment of the assessments on the premium note. As we have seen, the defendant proposed to revive the contract by assent to the mortgage on condition that the delinquent installments be paid. The refusal to pay may, therefore, be understood to be, in effect, based upon the fact that the policy was annulled by the mortgage, and was not revived by the payment of the premium in accord with defendant's proposition, made when it was notified of the mortgage.

III. The plaintiff was permitted to testify, against defendant's objection, that after the action of the company in refusing to assent to the mortgage, and in returning the policy, he wrote to defendant that there were not two assessments due, and that he had paid one of them. The ground of the objection is, that the testimony is not applicable to any issue in the case. To the defendant's answer, setting up the non-payment of assessments and the execution of the mortgage, there was no reply. Defendant's counsel insist that the matter relied upon by plaintiff to avoid their defenses ought to have been pleaded in reply to the answer. We are not required to determine whether a reply was necessary, for these reasons:

1. No objection was made or question raised in the court below on the ground of the want of a reply, unless the objec-

tion to the evidence under consideration was based thereon. The objection cannot be first urged in this court.

2. Conceding that the objection to the evidence under consideration was based upon the want of a reply, which certainly does not clearly appear from the abstract, there was no error in admitting the evidence, for the reason that it was given in rebuttal of testimony of the secretary of the company, introduced by defendant to the effect that, when he returned the policy to the mortgagees, he wrote to them that the insurance for two years, or two assessments, was due, and that he received no reply to the letter from the plaintiff, or the mortgagees. The evidence in question tends to contradict this testimony. The defendant opened the door for the introduction of the evidence under consideration, and will not be now heard to object to it.

The foregoing discussion disposes of all questions discussed by counsel. For the error above pointed out, the judgment of the District Court is

REVERSED.

ADAMS, J., *dissenting.*—The court instructed the jury, in substance, that if the policy was sent to the company with request that the company should indorse upon it its consent to the mortgage, and the company in fact consented to the mortgage, but returned the policy without its consent indorsed thereon, it could not be heard to say that the policy was void because its consent was not thus indorsed. I do not understand my associates to hold that the rule of law enunciated is not correct abstractly considered, but that there was no evidence of consent; and for that reason, it was error to give the instruction.

It is certain that no express consent was given, verbally or in writing, but I think that the circumstances were such that the consent might justly be inferred. The letter written by the secretary of the company to the mortgagees, is in these words:

"*Gentlemen:* Frank Supple's policy No. 8,162 I this day return to you. There is due upon said policy two years insurance, amounting to $28.80. Upon receipt of a draft for $28.80 from him, or you, we will transfer said policy to you in case of loss."

It will be seen that no allusion is made to the mortgage. The company, then, did not refuse to consent to the mortgage, nor did it, as the majority seems to assume, propose to give its consent on a condition which was never performed. It was simply silent in respect to the mortgage, and proposed to consent to the transfer of the policy on a condition. The condition was not performed, and the transfer was not made, and the mortgagees are claiming nothing. The failure by the insured to pay the premium did not, as the majority holds, avoid the policy. The case to my mind, so far as the validity of the policy is concerned, stands precisely as it would have stood if the insured had paid, but had not transferred the policy. The failure to pay goes for nothing. Now, when the company returned the policy, and called for payment, it treated the policy as not having been avoided by the execution of the mortgage. It is plain to be seen that the company had no objection to the mortgage. It could, of course, have refused to consent, though it had no objection, or have offered to consent on condition of payment of the premium, but it did not do this, but did that whereby its want of objection to the mortgage was clearly evinced, and whereby its understanding that the policy was still in force was also evinced. In my opinion the court did not err in giving the instruction.