ROBERT L. LEACH, Superintendent of Banking, Appellant, v. EXCHANGE STATE BANK et al., Appellees.

**RECEIVERS: Allowance and Payment of Claims—Statutory Priority to Municipalities—Nonapplicability.** Sec. 12719, Code of 1924, granting a preference to municipal corporations in the liquidation of the affairs of a concern in the hands of a receiver, has no application to the liquidation of the affairs of state banks; Sec. 9239, Code of 1924, and other related sections on the same subject, providing an exclusive procedure for the organization, management, dissolution, and liquidation of such banks, without preference to any depositor.

**STATUTES: Construction—Repeal and Re-enactment—Effect.** Where a statute is repealed and re-enacted *with amendments,* any intermediate statute which is inconsistent with the new matter introduced will be regarded as repealed, so far as they are in conflict.

**RECEIVERS: Allowance and Payment of Claims—Right of Governmental Sovereign—Waiver.** The right of the state, as an attribute of sovereignty, to demand that it and its statutory agencies be given a preference in payment in the liquidation of the affairs of

a debtor, is necessarily surrendered by a statute which, as a whole, clearly evinces an intent to place debtors on an equality.

Headnote 1: 7 C. J. p. 749. Headnote 2: 36 Cyc. p. 1085 (Anno.) Headnote 3: 7 C. J. p. 749.

*Appeal from Guthrie District Court.*—J. H. APPLEGATE, Judge.

APRIL 7, 1925.

REHEARING DENIED JUNE 25, 1925.

THE state superintendent of banking was by the district court, on his application, appointed receiver for an insolvent state bank. An independent school district, having funds on deposit in the bank, by petition of intervention asked to have its claim for such funds allowed as a preferred claim against the assets of the bank. The demurrer of the superintendent of banking to the petition of intervention was overruled, and the claim given a preference, as prayed. The superintendent of banking appeals.—*Reversed and remanded.*

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien, Neill Garrett,* and *S. S. Faville,* Assistant Attorney-generals, *Carl P. Knox,* and *E. A. Morling,* for appellant.

*F. C. Beverly* and *Stipp, Perry, Bannister & Starzinger,* for appellee.

VERMILION, J.—There is involved in this case the question of the right of an independent school district having funds on deposit in an insolvent state bank to be preferred over other depositors in the distribution of the assets of the bank in the hands of the state superintendent of banking, as receiver. The question argued by counsel for both parties is broader than this, and goes to the right of the state and municipalities to be, under such circumstances, preferred over other depositors. While there is some contention that an independent school district is not a municipal corporation, in view of the concessions of counsel that the ultimate question involved is whether

1. RECEIVERS: allowance and payment of claims: statutory priority to municipalities: nonapplicability.

the state and its municipalities are entitled to such preference, we shall assume, without deciding, that the independent school district is such a body politic as to come within the express terms of Section 3825-a, Code Supplement, 1913 (Section 12719, Code of 1924), if that section is controlling.

Section 3825-a, so far as material, is as follows:

''When the property of any person, partnership, company or corporation has been placed in the hands of a receiver for distribution, after the payment of all costs the following claims shall be entitled to priority of payment in the order named: * * * Second. Debts due or taxes assessed and levied for the benefit of the state, county or other municipal corporation in this state.''

This statute was enacted by the thirty-first general assembly, and in its terms is of general application.

The contention of the appellee is grounded upon this statute, as construed and applied in connection with Section 1877 of the Code of 1897 in the case of *In re Receivership of Marathon Sav. Bank*, 198 Iowa 692.

Section 1877 provided, in substance, that the auditor of state, if satisfied that a bank was in an insolvent or unsafe condition, or that the interests of creditors required the closing of the bank, might authorize a bank examiner to take possession of the bank, and might forthwith, with the assent of the attorney-general, apply to the district court for the appointment of a receiver for the bank, and its affairs should ''be wound up under the direction of the court, and the assets thereof ratably distributed among the creditors thereof, giving preference in payment to depositors.'' By Chapter 40, Acts of the Thirty-seventh General Assembly, the banking department of the state was created, with the superintendent of banking as its chief officer, in whom were vested all the powers relating to banks theretofore vested in the auditor of state.

We held, in the *Marathon Bank* case, upon a consideration of these statutes, that, where a state bank was being wound up and its assets distributed by a receiver appointed at the suit of its officers, a county having funds on deposit in the bank was entitled to be preferred over other depositors.

Subsequent to the appointment of the receiver in the *Marathon Bank* case, the legislature, by Chapter 189, Acts of the Fortieth General Assembly, amended Section 1877 by striking out the provisions above referred to, and enacting in lieu thereof that the superintendent of banking may "appoint an additional bank examiner to assist him in the duty of liquidation and distribution, whereupon the right of levy, or execution, or attachment against said bank or its assets shall be suspended, and the superintendent of banking may apply to the district court for that district in which said bank is located, or a judge thereof, for the appointment of said superintendent as receiver for such bank, and its affairs shall thereafter be under the direction of the court, and the assets thereof after the payment of the expenses of liquidation and distribution shall be ratably distributed among the creditors thereof, giving preference in payment to depositors. The attorney-general of the state, or such assistants as may be appointed by the court, shall represent the superintendent of banks in all proceedings provided for hereunder. No general assignment for the benefit of creditors shall be of any validity. The superintendent of banking henceforth shall be the sole and only receiver or liquidating officer for state incorporated banks and trust companies, and he shall serve without compensation other than his stated compensation as superintendent of banking, but he shall be allowed clerical and other expenses necessary in the conduct of the receivership. All expenses of supervision and liquidation shall be fixed by him, subject to approval by the court or a judge thereof, and shall upon his certificate be paid out of the funds of such bank in his hands."

The last mentioned statute was in force at the time of the appointment of the receiver in the instant case; and the question is presented whether under it the rule of the *Marathon Bank* case is to be applied, or whether the legislature has thereby provided for a ratable distribution of the assets of an insolvent bank in the hands of the superintendent of banking as receiver, notwithstanding the provisions of Section 3825-a.

Banks chartered by the state are under state supervision. Elaborate and detailed provision is made by statute for their organization and control, and their powers and obligations are

strictly defined. A separate department of the state government is provided, charged with the duty of administering the laws with respect to banks. The statute controls the amount of their capital, and regulates the manner of its investment. They are required to make periodical reports to the department of banking, covering exhaustively their condition and exhibiting their resources and obligations, and are subject to examination by the department. Provision is made for their dissolution, and the state assumes and exercises, through the superintendent of banking, the right to enforce their involuntary dissolution, when they are found to be insolvent or in an unsafe condition. These provisions are in the interest and for the protection of their depositors and those who transact business with them. There is no occasion to state here either exactly or fully the statutory provisions referred to. It suffices to say that, prior to the enactment of Chapter 189 of the Acts of the Fortieth General Assembly, the state had, in a series of legislative enactments relating alone and exclusively to banks, made provision for their organization, management, operation, and dissolution, and placed the administration of these laws, with an important exception to be presently noted, in the hands of the superintendent of banking. These enactments, save in the one particular, have a close similarity to the Federal statutes relating to national banks, with such differences as the nature of the subjects required.

There are other and collateral aspects in which the situation of state banks in relation to their depositors is, under the state law, similar to that of national banks, as governed by Federal statutes. National banks are permitted to receive deposits of money at the hands of the Federal government and its agencies, upon giving certain stipulated security therefor. The funds belonging to the state and its municipalities and their officers may be deposited in banks, upon the execution by the banks of depository bonds securing their return. Again it is unnecessary, for our present purpose, to make exact reference to the statutes.

Federal statutes also contain a provision, general in character, to the effect that, whenever any person indebted to the United States is insolvent, debts due to the United States shall

be first satisfied. Section 3466, Revised Statutes. This statute is, in effect, the same, as respects debts due the United States, as Section 3825-a in respect to debts due the state or any municipality from a corporation in the hands of a receiver.

It has long been settled that this last mentioned Federal statute is not effective, as against a provision of the National Bank Act providing for a ratable distribution of the assets of an insolvent national bank, after the redemption of its outstanding circulating notes, to give a preference to the payment of deposits of the Federal government or its agencies. *Cook County Nat. Bank v. United States,* 107 U. S. 445 (27 L. Ed. 537) ; *Davis v. Elmira Sav. Bank,* 161 U. S. 275 (40 L. Ed. 700).

The decision in the *Cook County Nat. Bank* case was bottomed upon the doctrine that the Federal act relating to national banks constituted by itself a complete code of laws for the organization, control, and dissolution of national banks, and the manner of payment of their debts. The court, speaking by Justice Field, said:

''We consider that act as constituting by itself a complete system for the establishment and government of national banks, prescribing the manner in which they may be formed; the amount of circulating notes they may issue; the security to be furnished for the redemption of those in circulation; their obligations as depositaries of public moneys, and as such to furnish security for the deposits, and designating the consequences of their failure to redeem their notes; their liability to be placed in the hands of a receiver; and the manner, in such event, in which their affairs shall be wound up, their circulating notes redeemed, and other debts paid, or their property applied towards such payment. Everything essential to the formation of the banks, the issue, security, and redemption of their notes, the winding up of the institutions, and the distribution of their effects, are fully provided for, as in a separate code by itself, neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates.''

At the time a rehearing was denied in the *Marathon Bank* case, a supplemental opinion was filed, which dealt with the contention that the banking laws of this state, in connection with

Section 3825-a, presented a situation so like that found in the Federal statutes as to require us to then adopt the reasoning and apply the rule of the *Cook County Nat. Bank* case. We declined to do so, under the statutes controlling in that case and then under consideration.

At that time, the banking laws of the state, as appearing in those statutes, presented a marked and, we think, controlling distinction, when compared with the Federal statutes relating to national banks. Section 1877, as modified by the statute creating the office of superintendent of banking, provided that, whenever that officer should become satisfied that a bank was in an insolvent or unsafe condition, or that the interests of creditors required its closing, he might authorize a bank examiner to take possession of the bank; and that he was authorized, with the assent of the attorney-general, to apply forthwith to the district court for the appointment of a receiver for the bank; and that its affairs should be wound up under the direction of the court and its assets ratably distributed among its creditors, giving preference in payment to depositors. This statute required the affairs of the bank to be wound up and its assets distributed under the direction of the court, acting through a receiver, and gave to the superintendent of banking only the authority to take possession of the bank and ask for the appointment of a receiver by the court; but gave him no authority, independently of such action by the court, to himself wind up its affairs and distribute its assets. When the superintendent of banking took possession of a bank, there his authority stopped, so far as dissolution was concerned, unless he applied to the court for the appointment of a receiver, by whom, under the direction of the court, its affairs should be wound up. He might take possession of the bank, in a proper case, and hold it for the protection of all parties interested. If, in that situation, the bank, through the efforts of its officers, directors, or stockholders, was able to so adjust its affairs that it could reopen, and continue business with safety, dissolution would not be required, and no receiver would be necessary. But if dissolution was necessary, that could only be accomplished through a receivership under the direction of the court; for it was further provided that he might apply to the court for the appointment

of a receiver, and that the affairs of the bank should be wound
up under the direction of the court. In brief, the power and
authority of the superintendent of banking to liquidate an in-
solvent bank and distribute its assets were much short of those
conferred by Federal statutes upon the comptroller of the cur-
rency over national banks; and in that respect the statute dif-
fered materially from the Federal statute governing national
banks, and the state did not then have such a separate and com-
plete code of laws governing the involuntary dissolution of state
banks as to take the subject out of the operation of a general
law; but the matter was left in the hands of the court, with au-
thority to wind up the bank's affairs through its receiver, which
brought it within the express terms of Section 3825-a, a general
and subsequently enacted statute. Furthermore, we had held, in
*Dickerson v. Cass County Bank,* 95 Iowa 392, that statutory
provisions for the appointment of a receiver of an insolvent
bank on application of the auditor of state were not exclusive,
and that the right still existed, under the general law, in any
proper interested party, and upon a proper showing, to have a
receiver appointed.

It was in this state of the law that we declined, in the *Mara-
thon Bank* case, to hold that the statutes of the state provided
such a complete and separate code for the organization, manage-
ment, and dissolution of state banks and the distribution of their
assets as to take them out of the general provisions of Section
3825-a, applying to all corporations in the hands of a receiver.

It cannot be questioned, we think, that the only respect in
which the state statutes failed to make such separate and com-
plete provision was in regard to the involuntary dissolution of
banks and the distribution of their assets. The accomplishment
of these things, under the statutes then under consideration, re-
quired the intervention of the court through a receiver, who
might be any person selected by the court, and was not required
to be the superintendent of banking. The situation is well il-
lustrated by the facts involved in the *Marathon Bank* case, where
the suit was instituted by the bank's officers, the receiver was
the attorney for the bank, and the superintendent of banking
had no connection with the closing of the bank or the subsequent
proceedings.

Chapter 189 of the Acts of the Fortieth General Assembly has, we think, supplied the necessary statutory requirements to bring our banking laws to such a parity with the Federal statutes relating to national banks as to no longer afford reasonable or logical basis, because of differences in the statutes, for denying them the effect, as against general provisions, accorded to the Federal statute. The act in question gives to the superintendent of banking, independently of the appointment of a receiver, the power to liquidate an insolvent bank and distribute its assets. After providing that he may, in a proper case, take possession of a bank, it gives him authority to appoint an additional bank examiner to assist *him* in the duty of *liquidation* and *distribution*. It is then further provided that he *may* apply to the court for the appointment of himself as receiver for the bank, and that its *affairs* shall *thereafter* be under the direction of the court. The change here is significant. Whereas formerly it was only upon the appointment of a receiver that the bank's affairs were to be wound up, and then under the direction of the court, under the instant statute the superintendent is first authorized to appoint an additional bank examiner to assist *him* in the duty of liquidation and distribution, and then given permission to apply for a receiver; and thereafter the bank's affairs shall be under the direction of the court. It is not difficult to see that many of the affairs of a bank might require the services of a receiver and the direction of the court in their settlement; but the actual "winding up" of its affairs and the distribution of its assets do not, under this statute, necessarily require either the services of a receiver or judicial direction. Furthermore, the present statute expressly provides that the superintendent of banking shall be the "sole and only receiver *or* liquidating officer." If it was not the legislative purpose to give to the superintendent of banking, as such, and without his being appointed receiver, power to liquidate an insolvent bank,—if a receiver was still to be the only liquidating officer,—why was it thought necessary to provide, and in the alternative, not only that the superintendent should be the only receiver, but that he should be the only liquidating officer? It is the superintendent of banking, and not the receiver, who is made the only liquidating officer. It is true, the authority given in

both statutes to apply for the appointment of a receiver is permissive, rather than mandatory. In the former statute, however, this had reference to the necessity for liquidation; while in the present act it refers, not to the necessity for liquidation,— for the superintendent is given authority to liquidate the bank,— but to some exigency arising in the affairs of the bank that makes a receiver desirable or necessary. We would not be understood as saying that, where the superintendent of banking is not appointed receiver, his actions in the winding up of the affairs of a bank and distributing its assets are beyond the control of the court, or as expressing any doubt of the power of the court, in a proper case, to afford appropriate relief, as against the superintendent of banking, when, in that capacity only, he undertakes the liquidation of an insolvent bank. We may add that the propriety of this enlargement of the power and authority of the superintendent of banking to include the liquidation and distribution of the assets of an insolvent bank without being appointed receiver, is a matter for legislative, rather than judicial, concern. We are called upon only to construe the statute as we find it. That it does so enlarge his power, we think is plain. Whether these provisions operate to take away the right, heretofore recognized, of an individual to ask for the appointment of a receiver for a banking corporation, we do not determine; but that they do deprive the court of the power to deny to the superintendent of banking the right expressly conferred upon him to act as receiver, if one is needed, and, in any event, to liquidate the bank and distribute its assets, is clear.

We think that, to say the least, these changes in the statute, and the enlargement of the powers and duties of the superintendent of banking, and the corresponding exclusion of the necessity for a receiver and judicial direction in the distribution of an insolvent state bank's assets, would fully warrant, if not in fact require, if recognized rules of statutory construction will permit, a holding, in accord with the doctrine announced in *Cook County Nat. Bank v. United States,* supra, that the general statute providing for a preference on behalf of the state and its municipalities, in the distribution of the assets of a corporation in the hands of a receiver, is no longer applicable to banks.

As a general rule, a later law which is merely a re-enactment of a former is not regarded as repealing an intermediate act which has qualified or modified the first one; but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first. But the rule is subject to the limitations or exceptions that, where a law is amended and re-enacted, any intermediate law inconsistent with the new matter introduced or change made by the amendment will be regarded as repealed, so far as they are in conflict, and that, when a law is substantially re-enacted, it shows that the legislature did not regard it as repugnant to an intermediate act to some extent covering the same subject. 1 Lewis' Sutherland on Statutory Construction (2d Ed.) 524, Section 273; *Hawes v. Fliegler,* 87 Minn. 319 (92 N. W. 223); *Lynch v. Chase,* 55 Kan. 367 (40 Pac. 666).

2. STATUTES: construction: repeal and re-enactment: effect.

The amendment of Section 1877 by striking out a portion, including the provisions for a ratable distribution of assets, with preference to depositors, and the re-enactment of that provision, with the enactment of others that placed the duty of liquidation and distribution of assets upon the superintendent of banking, irrespective of whether he had been appointed receiver, and the omission of the former provision that the winding up of the affairs of the bank should be under the direction of the court, clearly evinced a legislative intent to provide, in the case of banks, for a ratable distribution of assets, with preference to depositors, whether a receiver was appointed by the court or not. It could not be contended that Section 3825-a required that a preference be given state or municipal deposits in the case of liquidation of a bank by the superintendent of banking where he had not been appointed receiver. That section neither in terms nor by implication so provides. It requires such a preference only when the property is in the hands of a receiver. Can it be said that, by the re-enactment of the provisions of Section 1877 for a ratable distribution of assets, with preference to depositors, and the granting of power to the superintendent of banking to make the distribution without being appointed receiver, the legislature intended that, when distribution was made by him in that capacity, there should be no preference among

depositors, but that, when made by him as receiver, the provisions of Section 3825-a should control, and state and municipal deposits be given a preference? Should we not rather conclude that, when the appointment of a receiver ceased to be an essential and a necessary preliminary step to the distribution of assets, and was made merely a permissible incident in the administration of the insolvent estate, it should also cease to be the determining factor in the manner of distribution? The mere statement of the proposition is sufficient to demonstrate that it was not the legislative intent that the mere fact that the superintendent of banking was appointed receiver, when such appointment was not a necessary preliminary to the distribution of the assets of a bank, should nevertheless work a radical change in the rights of depositors; or that, with full power to make distribution as superintendent of banking, he could, by procuring himself to be appointed receiver, give a preference to one class of depositors over another.

If we regard the later act, as we do, as much more than the mere re-enactment of Section 1877, it was a clear relinquishment of any common-law right of preference which in-

3. RECEIVERS: allowance and payment of claims: right of governmental sovereign: waiver.

heres in the state and its municipalities as an attribute of sovereignty, and which may be said to have been reasserted by Section 3825-a, the intermediate act, and was a subsequent declaration of legislative purpose to provide for a ratable distribution of the assets of insolvent state banks, with preference to depositors generally.

The contention that the state is not to be bound by the words of a statute unless expressly named therein, if the statute tends to restrain or diminish the powers, rights, or interests of the sovereign, is fully answered in *Cook County Nat. Bank v. United States*, supra.

Certain considerations of public policy weigh strongly against a construction of the statutes involved that would make Section 3825-a applicable to insolvent state banks. Not only has the right of the United States to a preference for claims due from an insolvent national bank been denied, but it has been held that a state statute giving a preference to one class of bank depositors over another is inoperative in the case of a na-

tional bank. *Palo Alto County v. Ulrich,* 199 Iowa 1; *Davis v. Elmira Sav. Bank,* supra; *Easton v. Iowa,* 188 U. S. 220 (47 L. Ed. 452); *First Nat..Bank v. Selden,* 56 C. C. A. 532 (120 Fed. 212, 62 L. R. A. 559). The state is powerless to enforce a statutory preference in respect to its own deposits or those of its municipalities in insolvent national banks. This results in an obvious discrimination, as between depositors in insolvent state and national banks, not alone with respect to public funds so deposited, but as affecting individual depositors as well. If deposits belonging to the state and municipal corporations are preferred in one class of banks and not in the other, it follows that the payment of individual depositors in one case must be postponed until the depositors of public funds are paid in full, with the probability that the remaining assets will be insufficient to pay unpreferred depositors in full; while in the other, all depositors stand upon an equal footing. The possibility of this result to the individual depositor might well, especially in times of financial stress, work a serious discrimination against state banks. They must either forego any advantage to be had from the deposit of public funds, or offer less security to the individual depositor than a national bank otherwise similarly situated, and therefore be at a disadvantage in the field of competition in general business. Moreover, the risk assumed by the surety on the depository bond required of a state bank to secure the deposit of public funds is reduced to the possibility that its total assets may not pay such deposit; while in the case of a national bank, the surety assumes the greater risk that its assets may not pay its total deposits. That these results are matter of grave public concern goes without saying; and that they should be permitted to be brought about only by the most unequivocal legislative enactments, and not at all by judicial construction of existing statutes, unless established canons of statutory construction imperatively require it, is plain. These considerations are persuasive upon us to adopt that construction of the statutes, where their language and history and the settled rules of construction permit, that will result in the application to insolvent state banks of the same rule we are required to enforce in the case of national banks.

Still another consideration, and one entitled to weight, not

only upon the question of public policy involved, but upon the legislative intent in re-enacting, with Section 3825-a upon the statute books, the provision of a prior statute for the ratable distribution of the assets of an insolvent state bank, with preference to depositors, is the fact that the statutes make ample provision for the security of public funds on deposit in banks, by requiring depository bonds; and that, in the case of a failure to comply with these requirements, under established principles of equity, the deposit would be wrongful, and, if traceable as augmenting the bank's assets, would be recoverable as a trust fund. The proper protection of public funds, recognized as a salutary purpose to be accomplished, is not jeopardized by a holding that the statute in question provides for a ratable distribution of the assets of an insolvent state bank, with preference to depositors.

We therefore hold that Chapter 189 of the Acts of the Fortieth General Assembly, in connection with the statute thereby amended and prior statutes on the subject, constituted a separate and complete code of laws governing the organization, operation, and liquidation of state banks, and controlled the distribution of their assets, notwithstanding the general provisions of Section 3825-a. These statutes are now to be found under Title XXI of the Code of 1924.

It follows that the demurrer to the petition of intervention should have been sustained. The case is—*Reversed and remanded.*

FAVILLE, C. J., and EVANS, J., concur.

ARTHUR, J.—I am unable to distinguish the case before us from the *Marathon* case; but, in studying this case in connection with the *Marathon* case, I have become convinced that the decision of that case is wrong. That decision was based on Section 3825-a of the Code Supplement of 1913, which was a general receivership statute, and, I think now, was not intended to and did not apply to receiverships for banks, and did not supersede Section 1877 of the Code of 1897, which did apply to banks. Having reached this conclusion, I concur in the majority opinion in this case.

ALBERT, J.—I agree with Judge Arthur in his special concurrence, but am disposed to doubt the validity of the statute (Chapter 189, Acts of the Fortieth General Assembly), in so far as it attempts to confer power upon the superintendent of banks to liquidate insolvent banks independently of the courts. If this is the import of the majority opinion, it seems to me that it is an attempt to confer judicial power on a purely administrative officer; but, as this viewpoint is not urged in argument, I wish to note it, to the end that, should the question be brought before us in the future, I do not wish to be held committed on that question by the majority opinion herein. Otherwise, I concur in the majority opinion.

STEVENS, J., being disqualified, takes no part in this decision.

DE GRAFF, J., takes no part in this decision.