L. A. ANDREW, State Superintendent of Banking, Appellee, v. FARMERS STATE BANK OF FAIRFIELD et al., Defendants; J. M. BLOUGH et al., Appellants.

No. 41711.

FEBRUARY 7, 1933.

Ralph H. Munro, for appellants.

John Fletcher, Attorney-general, and Starr & Jordan, for appellee.

EVANS, J.—There are two banks that figure in this record,— the Farmers State Bank of Fairfield and the Iowa State Savings

Bank of Fairfield. These are referred to respectively in the record as the "Farmers Bank" and the "Savings Bank" and we shall refer to them accordingly herein. The plaintiff is acting as Receiver for the Farmers Bank. On or about November 28, or November 30, 1928, the Farmers Bank was embarrassed as a going concern. It had a paid-up capital of $100,000 and held as a part of its assets an investment in real estate to the extent of $100,000. Its capital investment was thereby frozen. It had been organized in 1921. It had never paid a dividend. Its credits and liabilities respectively amounted approximately to $385,000. Its assets over and above its capital investment consisted in the major part of deposits. On November 28, 1928 (Thanksgiving Day), and later, on November 30, 1928, it entered into negotiations with the State Savings Bank in the same city, whereby it sought an assumption of its liability to depositors by the Savings Bank and whereby it purported to pay to the Savings Bank the full amount thus assumed by such bank. Its cash reserve amounted to approximately $25,000. Its other property consisted of its real estate and of its ordinary bank paper. Some eighty-odd thousand dollars worth of its paper was rejected by the Savings Bank; likewise its real estate. The paper accepted by the Savings Bank as probably good, fell short of the amount of the deposits assumed by approximately $145,000. This gap was covered by the issuance of the obligation of the Farmers Bank to the Savings Bank for such sum. The real estate and the discarded paper were turned over to certain of the directors as trustees for the purpose of realizing on the same for the bank. The amount to be thus realized was to be applied on the $145,000 obligation. As further security to the Savings Bank, the nine directors of the Farmers Bank executed promissory notes to the amount of $100,000 and delivered the same to the Savings Bank, as security. A meeting of the stockholders was called by the directors and was very fully attended. Full information was imparted. The capital stock consisted of 1000 shares. These shares were voted at the meeting with a result of 850 yeas and 10 nays. The Savings Bank paid the depositors in full. The trustees have collected all that is collectable and of the real estate have sold all that is salable. The remaining indebtedness to the Savings Bank upon the $145,000 obligation is approximately $130,000. The defense interposed is in substance that the defendants were non-consenting stockholders, and that neither the Board of Directors nor a majority of the stockholders had any power to bind

them to the proposed dissolution. It is not clear upon the record how many non-consenting stockholders there were. There was a total of 218 stockholders. Seventeen of these are contesting the assessment. These 17 hold 118 shares. Of these 118 shares, 87 shares were included in a preliminary waiver and in an agreement to attend the stockholders' meeting and to ratify the agreement. The meeting of the stockholders was on December 17, 1928. All the details of the proposed written agreement between the two banks were fully laid before the stockholders' meeting. One of the provisions incorporated in the agreement was that, in event the liquidation of the assets turned over to the Savings Bank by the Farmers Bank should not be sufficient to pay the $145,000 obligation, then a statutory assessment upon the stockholders should be made. It is urged by the appellants that the understanding and agreement was that the proposed arrangement should be in lieu of a stockholders' assessment and that its consideration was that no stockholders' assessment should be made. The record does not fairly sustain this contention. Undoubtedly the directors and the stockholders hoped, and perhaps fully believed, that the proposed arrangement would suffice to liquidate the bank and thus protect all stockholders against further loss. To that extent the later results were very disappointing. As we know now, the time following December 17, 1928, was unpropitious for the purposes of liquidation. $100,000 worth of real estate, unsalable before, became still less salable thereafter. Its value depreciated 50 per cent. Solvent makers of notes became insolvent, and the mutual hope of all the parties concerned, debtor and creditor, became a "hope deferred." That these events were not forseen nor apprehended by the directors does not justify the contention that the action of the stockholders was induced by any promise to relieve them of their statutory liability if its enforcement became necessary to the payment of the then existing liabilities of the bank.

The decisive question of law in the case in our judgment is whether the transaction under consideration was fairly justified under Sections 9222 and 9297 of the Code of 1927. These sections of the statute deal with the question of indebtedness which may be contracted for by state and savings banks. They confer express power upon the corporations to "contract indebtedness or liability * * * for deposits, and to pay depositors." No limit is set upon the amount of indebtedness or liability that may be contracted for such purpose. The $145,000 obligation to the Savings Bank was

contracted for just that purpose. The Farmers Bank was therefore originally liable for that debt. The stockholders would have been assessable therefor. The statutory course to be followed from this point was to have appointed the receiver. This appointment could have been had upon the petition of any stockholder. No stockholder asked for it. Responsibility for that failure rests no more upon the majority stockholders than upon the minority. But during the interim when a receiver might have acted, if appointed, nothing was done to the detriment of any stockholder. There was no attempt by anyone to exercise an excess of authority as against the minority stockholders. When it became evident to the parties interested that the scheme of liquidation adopted by them was about to disappoint their hopes, a receiver was appointed and has ever since exercised his jurisdiction. The minority stockholders have not been prejudiced by the delay; nor were they coerced in any respect pending the delay. There has been no diversion or conversion of the assets. In so far as the stockholders' meeting of December 17, 1928, may be deemed a step in the direction of dissolution of the corporation, it was legitimate and regular. The vote of 850 to 10 was largely in excess of the statutory requirement for the purpose of dissolution. The argument of the appellants at this point is that they are not subject to assessment at this time for debts which accrued after dissolution of the bank and which did not accrue in the operation of the bank. This proposition in general terms is to be conceded. If, in the attempted voluntary liquidation, other debts and obligations had been incurred by the liquidating trustees, such transaction might fall outside of the contemplation of the statutory assessment. But the $145,000 obligation was not of that kind. Before any assumption on the part of the Savings Bank, the $145,000 obligation was included in the measure of the obligation of the Farmers Bank to its depositors. For the very purpose of discharging its obligation to its depositors, it contracted with the Savings Bank to pay the depositors and to accept its equivalent obligation therefor. From that time forth the Savings Bank became the only creditor of the Farmers Bank, and it has continued as such creditor ever since. The stockholders were liable to an assessment for its payment then, and we discover no reason to say that they are not liable therefor now. For authority for their contention, the appellants rely solely upon two of our former cases. Peet v. Des Moines Savings Bank, 190 Iowa 1020; Andrew v. Dunn, 202 Iowa 364. We think that the cited cases

have no application to the decisive features of the case before us. In the first of the cited cases a merger was attempted as between the insolvent bank and another, and the depositors were all paid. Other creditors remained. They consisted mainly of the officers of the bank. They took possession of the remnant of the assets of the insolvent bank and aimed to retrieve their losses. One of the assets was a garage. These officers operated such garage and incurred obligation in connection with its operation. When after many years a receiver was appointed, who sought to levy an assessment upon the stockholders, it was made to appear in defense that the debts for which assessment was sought had each and all accrued many years after the closing or merging of the bank. Some of them were incurred in the operation of the garage. We held they were outside of the pale of the statute. The decision in Andrew v. Dunn was predicated upon like grounds.

We reach the conclusion in the case at bar that the indebtedness for which the assessment is sought herein was a definite part of the indebtedness of the insolvent bank at the time it ceased to function as a going concern, and that nothing has transpired since that lifts from the stockholders the obligation to submit to an assessment for its payment. Such was the holding of the district court, and its order is—Affirmed.

KINDIG, C. J., and STEVENS, ALBERT, UTTERBACK, and DONEGAN, JJ., concur.