L. A. ANDREW, Superintendent of Banking, Receiver, Appellee, v. PEOPLES SAVINGS BANK of Des Moines et al., Appellants.

No. 41685.

JUNE 20, 1933.

Oscar Strauss, for appellants H. E. Rumsey, J. S. Carpenter, D. W. Smouse, Alma Smith, R. J. and J. C. S. Fleming, E. R. Stotts and W. R. Prouty.

Edward L. O'Connor, Attorney-general, and Gamble, Read & Howland, for appellee.

DONEGAN, J.—On and prior to the 30th day of October, 1928, the People's Savings Bank, a duly incorporated bank under the laws of the state of Iowa, was conducting a general banking business in the city of Des Moines, Iowa. Its authorized capital of $100,000 was divided into one thousand shares of the par value of $100 each, and had all been issued and was then outstanding.

Shortly before the 30th day of October, 1928, the superintendent of banking advised the officials of said bank that, unless something was done to place its affairs in a more satisfactory condition, the banking department would insist that it be closed. Negotiations were opened with the Bankers Trust Company, another banking institution in the city of Des Moines, concerning an arrangement by which the said Bankers Trust Company might take over the deposit liabilities of the People's Savings Bank. The superintendent of banking participated in these negotiations along with the officials of both banks, and on October 30, 1928, the board of directors of the People's Savings Bank approved and directed the execution of a written contract between said bank and Bankers Trust Company.

The written contract thus entered into is a quite voluminous document, and it is unnecessary to set it out in full herein. The purpose of the contract was to provide funds for the payment and

discharge of all deposit liabilities of the People's Savings Bank by Bankers Trust Company, and to secure Bankers Trust Company, in so far as possible, against loss by reason of its undertaking. The total of the deposit liabilities of the Peoples Savings Bank at that time amounted to approximately $2,900,000. In compliance with the contract, and in order to meet this deposit liability, approximately $477,000 in cash in the Peoples Savings Bank was turned over to the Bankers Trust Company; the Peoples Savings Bank gave to Bankers Trust Company its note for $100,000; other Des Moines banks contributed the additional sum of $100,000; the Bankers Trust Company purchased outright from the Peoples Savings Bank securities aggregating approximately $900,000; and the further sum of $1,300,000 necessary to meet such deposit liabilities was provided by the Bankers Trust Company rediscounted with recourse certain other Peoples Savings Bank securities aggregating in face value $1,300,000, which were designated as "segregated securities" in the contract. All the remaining assets of the Peoples Savings Bank, with minor immaterial exceptions, were assigned and transferred to Bankers Trust Company as collateral security for the payment to Bankers Trust Company of any or all obligations of the Peoples Savings Bank to Bankers Trust Company.

Following the execution of this contract, on October 30, 1928, the People's Savings Bank closed its doors, and the Bankers Trust Company proceeded to carry out the terms of the arrangement which had been made. All of the deposit liabilities were paid and efforts were made by the Bankers Trust Company to liquidate the securities which it had received from the People's Savings Bank. Not all of the "segregated securities" could be liquidated at their face value, and in the month of July, 1931, it became apparent that the assets of the People's Savings Bank had become substantially less than the amount of its obligations. At that time the Bankers Trust Company still held approximately $114,000 of the "segregated securities" which it had rediscounted with recourse on the People's Savings Bank, and which were unpaid and apparently uncollectible. Bankers Trust Company also held the demand note of the People's Savings Bank for $100,000, with accrued interest at 6 per cent from the date of its execution. The total amount, including interest, which the People's Savings Bank was thus owing the Bankers Trust Company, was approximately $248,000, less the sum of $75,000, which, under the terms of the contract, the Bankers Trust Company

had agreed to allow to the People's Savings Bank as premium. It further appears that at this time, in July, 1931, the total value of all remaining unliquidated assets of the People's Savings Bank did not exceed $36,000, and that there were claims of other creditors that were unpaid. The Bankers Trust Company instituted a suit against the People's Savings Bank in the district court of Polk county, Iowa, to enforce payment of the amount which it claimed due, and alleged the insolvency of the People's Savings Bank and asked for the appointment of a receiver. Thereupon L. A. Andrew, as superintendent of banking, intervened in the action thus instituted, and asked that he be appointed as receiver, and on July 18, 1931, the district court of Polk county, Iowa, appointed him as such receiver. Following the appointment and qualification of the receiver, claims were filed by various creditors and allowed by the court in excess of $250,000, including the claims of the Bankers Trust Company. It appearing that the only remaining assets of the People's Savings Bank were of no greater value than approximately $36,000, it became quite apparent that, after allowing the credit of $75,000 on the claim of the Bankers Trust Company, there would still be an unpaid indebtedness greatly in excess of the 100 per cent, that an assessment on all stock could produce. Thereupon L. A. Andrew, superintendent of banking, as receiver of the People's Savings Bank, instituted this action. The eight defendants, who are the appellants in this case, appeared and answered. Trial was had to the court, and, on the 24th day of February, 1932, decree was entered finding that the assets of the People's Savings Bank were less in value by substantially more than $100,000 than the aggregate amount of liabilities of said bank, and that an assessment of 100 per cent on all stock of said bank and against all stockholders thereof was lawful and necessary. Judgment was entered against the stockholders, including the appellants herein. From such decree and judgment the defendants, who are appellants herein, appeal.

I. The first proposition relied upon by appellants for reversal is that "the jurisdiction of the Superintendent of Banking to liquidate banks under his supervision determined by him to be insolvent or otherwise unable to operate as a bank is exclusive. And liquidation or other procedure for winding up of such banks by any other process than by the Superintendent of Banking under the powers imposed by statute is a bar to the imposition of the capital assessment upon the appellants."

As to the first part of this proposition, which alleges that the jurisdiction of the superintendent of banking to liquidate banks is exclusive, there is apparently no dispute. The correctness of this statement is admitted by appellee, and it is therefore unnecessary to give it further consideration.

With the second part of appellants' first proposition relied upon for error, viz.: "And liquidation or other procedure for winding up of such banks by any other process than by the Superintendent of Banking under the powers imposed by statute is a bar to the imposition of the capital assessment upon the appellants", the appellee takes issue and denies that it is correct either as a matter of general law or as a matter of fact in this case.

Certain statutes are cited and relied upon by the appellants as controlling the appointment, powers, and duties of the superintendent of banking. These having reference to the second part of appellants' first proposition, which we are now considering, are sections 9238 and 9239 of the Code of Iowa, 1931, and are as follows:

"9238. If any such bank shall fail or refuse to comply with the demands made by the said superintendent, or if the said superintendent shall become satisfied that any such bank is in an insolvent or unsafe condition, or that the interests of creditors require the closing of any such bank, he may appoint an additional bank examiner to assist him in the duty of liquidation and distribution, whereupon the right of levy, or execution, or attachment against said bank or its assets shall be suspended.

"9239. The superintendent of banking may apply to the district court for that district in which said bank is located, or a judge thereof, for the appointment of said superintendent as receiver for such bank, and its affairs shall thereafter be under the direction of the court, and the assets thereof after the payment of the expenses of liquidation and distribution shall be ratably distributed among the creditors thereof, giving preference in payment to depositors."

The appellee quotes provisions from sections 9140, 9235, 9238, and 9239 of the Code of 1927. As the sections cited by both appellants and appellee appear without change in both the Codes of 1927 and 1931, there is no question here in regard to any change in the law.

Appellants contend that, when the People's Savings Bank closed its doors on October 30, 1928, and entered into the contract with the Bankers Trust Company, by which its deposit liabilities were as-

sumed by that bank, this amounted to a liquidation; that, under the provisions of Code, sections 9238 and 9239, the word "may" has a peremptory and not a permissive meaning; that under these statutes it became the duty of the superintendent of banking to liquidate the assets of the People's Savings Bank in October, 1928; and that the liquidation of said bank's assets, having been made under the agreement with Bankers Trust Company, cannot again be made by the superintendent of banking and an assessment enforced against the stockholders. Appellants cite many cases in support of their contention. With the exception of three cases, however, all of the authorities cited by appellants are from outside of this jurisdiction. The cases cited from other jurisdictions involve the construction of statutes differing from the statutes of this state and are not controlling. Of the three Iowa cases cited, only two have any reference to liquidation of insolvent banks by the superintendent of banking, and only one involves the construction of our statutes as to being permissive or peremptory. In the case of Leach v. Exchange State Bank, 200 Iowa 185, 203 N. W. 31, 34, in the very excerpt set out by appellants in their brief and argument, it is said:

"Furthermore, the present statute expressly provides that the superintendent of banking shall be the 'sole and only receiver or liquidating officer.' If it was not the legislative purpose to give to the superintendent of banking, as such and without his being appointed receiver, power to liquidate an insolvent bank, if a receiver was still to be the only liquidating officer, why was it thought necessary to provide, and in the alternative, not only that the superintendent should be the only receiver, but that he should be the only liquidating officer? It is the superintendent of banking, not the receiver, who is made the only liquidating officer. It is true, the authority given in both statutes to apply for the appointment of a receiver is permissive, rather than mandatory. In the former statute, however, this had reference to the necessity for liquidation, while in the present act it refers, not to the necessity for liquidation, for the superintendent is given authority to liquidate the bank, but to some exigency arising in the affairs of the bank that makes a receiver desirable or necessary."

The appellant contends that, because the affairs of the People's Savings Bank were in such condition that the superintendent of banking would have closed the bank if the contract with the Bankers

Trust Company had not been made, the People's Savings Bank was therefore insolvent, and it was the absolute duty of the superintendent of banking to close it and apply for the appointment of a receiver at that time. We are unable to find that the statutes cited by appellants require such interpretation, and we are likewise unable to find support for such interpretation of these statutes in the authorities cited by appellants. In the face of the positive statement in Leach v. Exchange State Bank, supra, that the authority given for the appointment of a receiver is permissive rather than mandatory, we are of the opinion that it was within the discretion of the superintendent of banking to try to make other arrangements for taking care of the obligations of the People's Savings Bank in October, 1928, instead of closing the bank and applying for his appointment as receiver. Moreover, under the circumstances of this case, it is not only possible but quite probable that the interests not only of the depositors but of the creditors generally, and even of the stockholders themselves, were more fully protected by the procedure pursued by the superintendent of banking than if he had peremptorily closed the bank, been appointed as receiver, and forced a liquidation as such receiver.

In the case of Garvey v. Bankers Trust Company, 214 Iowa 401, 239 N. W. 518, 519, the solvency of the People's Savings Bank at the time of making the contract with the Bankers Trust Company was involved, and there was also involved to some extent the effect of such contract upon the rights of the depositors. In that case this court said:

"In view of the notorious financial condition of the country during the last two or three years, when values generally of all classes of property, including stocks, bonds, and commodities, have shrunk to an unbelievable extent, we should not be justified in saying that the values of today are an index of the values of October 30, 1928. It is notoriously true that many banks, solvent in 1928 have become insolvent in these ensuing years. Upon the record before us no better basis of judgment or standard is presented to us than the honest belief of the capable men who examined the bank to the best of their ability in 1928. The trust company could have had no possible motive to take the assets and assume the liabilities of an institution if its officials believed that the liabilities were greater than the assets. As a matter of public policy, the taking

over of the assets and liabilities of a solvent bank in distress, by a stronger one, is a course to be encouraged, in the interest of depositors and to the composing of the public mind in time of panic."

We find no support in either our statutes or the authorities construing them for the claim of appellants that the liquidation of the deposit liabilities of the People's Savings Bank, under the contract with Bankers Trust Company, is a bar to the liquidation of the other indebtedness of the People's Savings Bank by the superintendent of banking as receiver, or to the enforcement of the statutory liability of the stockholders.

II. Appellants' second proposition relied upon for reversal is that "the transaction between the Bankers Trust Co., and The Peoples Savings Bank constituted a sale and thereby the appellants were relieved of their statutory capital liability." Appellants cite three cases in support of this proposition. All of these cases are from foreign jurisdictions, and none of them, in our opinion, supports the contention of appellants. An examination of the authorities cited shows that in each case all the assets of the bank were taken over, and that as a part of the consideration the purchaser agreed to discharge certain stated obligations of the bank. The assets thus purchased having proved insufficient to discharge all the obligations thus assumed by the purchaser, the purchasing bank sought to have recourse against the stockholders on their statutory liability. In each case the court held that the statutory liability was one imposed for the benefit of the creditors of the bank upon whose stockholders it was sought to impose such liability. As the purchasing bank had agreed with the selling bank to pay the very obligations, for the payment of which it was sought to impose the statutory liability upon the stockholders, such purchasing bank was not a creditor of the selling bank and could not enforce an action to impose the statutory liability upon the stockholders. Moreover, in the case now before us, there was not an absolute purchase of all the assets of the People's Savings Bank, and there was not an agreement upon the part of the Bankers Trust Company to pay all the obligations of the People's Savings Bank. So far as the record shows, the Bankers Trust Company has performed and fulfilled all the terms of the contract upon its part, and the obligations which are still unpaid are not obligations which the Bankers Trust Company agreed to pay, but are now, and have always been, the obligations of the People's

Savings Bank. Instead of there having been an outright sale by the People's Savings Bank of all its assets and the assumption of all its liabilities by the Bankers Trust Company, the contract clearly shows that it was understood and agreed between the parties that there was an absolute obligation of the People's Savings Bank upon the $100,000 note given by it to the Bankers Trust Company, that the rediscounts which were known as "segregated securities" were a contingent liability on the part of the People's Savings Bank and that the Bankers Trust Company was not assuming to pay any of the obligations of the Peoples Savings Bank except its deposit liabilities. Instead of all of its assets having been turned over to the Bankers Trust Company absolutely, it was clearly understood and stated in the contract that certain of the assets were merely assigned and transferred to the Bankers Trust Company as collateral. We find no reason for holding that there was such a sale in this case as to relieve the stockholders of the People's Savings Bank from their statutory liability.

■ III. Appellants' third proposition relied upon for reversal is that "the special meeting of stockholders of November 26th, 1928, at which alleged ratification of the contract Exhibit 'D' was had, was invalid for want of notice thereof." It appears that, following the execution of the contract between the People's Savings Bank and Bankers Trust Company on October 30, 1928, a special meeting of the stockholders of the People's Savings Bank was held on November 26, 1928, and that at this meeting a resolution was passed ratifying the action of the board of directors of said bank in executing such contract. The appellants attack the validity of this meeting on the ground that no notice of same was given to the stockholders as required by the by-laws of the People's Savings Bank. The specific by-law of said bank having reference to this subject was as follows:

"Special meeting of the stockholders may be held when requested by three or more Directors, or by Stockholders representing at least one-third of the stock; such request must be made in writing, signed by such Directors or Stockholders, and must be filed with the Secretary of the Board, who shall thereupon notify each stockholder by mail of the time and place of holding such meeting."

Appellants allege that there is a failure of proof to show that a written notice of such special meeting was mailed to the several stockholders of the bank in accordance with the provisions of this

by-law, and that there is affirmative proof that at least two of the stockholders did not receive any notice of such meeting. The minute book of the stockholders and directors' meeting of the People's Savings Bank was introduced in evidence, and shows that a request was made by three of the directors of said bank to the president of said bank to call a special meeting of the stockholders thereof on the 26th day of·November, 1928; that such a meeting was held; that at such meeting 793¾ shares of the stock of said People's Savings Bank was represented and voting; that a resolution was introduced ratifying the execution on behalf of the People's Savings Bank of the contract made with the Bankers Trust Company on October 30, 1928; and that said resolution was adopted by an affirmative vote of 788¾ shares of the stock of said bank.

The appellee contends that, even if it had been necessary that said contract be ratified by the stockholders, the undisputed fact that practically 79 per cent of the stock ratified such contract would in itself be sufficient, even though there had been a failure to notify all of the stockholders of such special meeting in accordance with the provisions of the by-laws. Appellee contends further that the contract in question was one which did not require the approval of the stockholders, because the indebtedness which existed in July, 1931, and on account of which the People's Savings Bank was ad-judged to be insolvent and a receiver then appointed, was indebted-ness which had been incurred by said bank as a result of the oper-ation of its banking business, and was such indebtedness as its board of directors had authority to incur. Such indebtedness consisted of the amount owing to Bankers Trust Company on the $100,000 note given by it to said bank, and the further sum of $114,000 arising from its unqualified indorsement with recourse of the rediscounts included in what was known as the "segregated securities". Appellee contends that the rediscounting of securities and the borrowing of money to raise funds to be used in discharging the indebtedness of said People's Savings Bank, particularly its deposit liabilities, is specifically authorized· by statute, and that the management of the business of said bank was vested in its board of directors. There is no question that the board of directors of the People's Savings Bank authorized and approved the contract with Bankers Trust Company on October 30, 1928, which involved the execution and delivery of the $100,000 note and the indorsement with recourse of the rediscounts known as "segregated securities".

The appellants have not favored us with any argument showing the necessity of the approval of such contract by the stockholders of the People's Savings Bank. So far as we are able to discover, the transactions out of which the indebtedness arose which the People's Savings Bank was unable to pay in July, 1931, were such as the board of directors had full power and authority to enter into in behalf of the bank. If this be true, the approval of such transactions by the stockholders would have been entirely unnecessary, and is therefore immaterial.

In view of the conclusions reached, we find no reason to disturb the decree entered by the trial court in this case, and such decree will therefore be affirmed.

KINDIG, C. J., and ALBERT, EVANS, STEVENS, and CLAUSSEN, JJ., concur.