D. W. BATES, Superintendent of Banking, Receiver, Appellant, v. PERU SAVINGS BANK et al., Appellees.

No. 42466.

SEPTEMBER 18, 1934.

REHEARING DENIED JANUARY 19, 1935.

Edward L. O'Connor, Attorney-general, W. T. Guiher, and Daniel J. Gallery, for appellant.

Gillespie & Moody, for appellees Nora I. Beeler and Ruth Beeler.

CLAUSSEN, C. J.—On the 15th day of July, 1930, a lengthy contract was entered into between the Peru Savings Bank of Peru,

Iowa, and three banks of Winterset, Iowa. It is not necessary to a proper understanding of the case to incorporate the language of the contract in the opinion. In substance and effect, the three Winterset banks agreed to advance sufficient cash to pay the depositors of the Peru Savings Bank. In order that the depositors of the Peru Savings Bank might be paid in full, it was necessary for two of the Winterset banks to advance $19,409.29 and for the third to advance $19,409.30. The Peru Savings Bank, pursuant to the contract, executed and delivered to each of the Winterset banks its note equal to the sum advanced by such bank. The contract provided that the assets of the Peru Savings Bank of every kind and description should be delivered to the cashiers of the three Winterset banks as trustees. Provision was made in the contract for the liquidation of the assets by the trustees and the application of the proceeds of liquidation in equal amounts upon the three notes above referred to. The contract provided that, if the assets delivered to the trustees were not sufficient to pay the three notes, then the trustees should require that an assessment be made against the stockholders of the Peru Savings Bank, and provided that the proceeds of such assessment be used in the payment of the liabilities of the Peru Savings Bank. In the contract, the Peru Savings Bank agreed to keep and preserve its organization until its affairs could be liquidated in accordance with the terms of the contract. The contract did not provide for the complete liquidation of the affairs of the Peru Savings Bank. It provided only for the payment of the deposit liability of the bank. It contains this provision:

"It is expressly agreed and understood that the three Winterset banks do not assume any liability for any unpaid and outstanding taxes, current expense, etc., it being the intention of the parties to this agreement that the three Winterset banks shall assume only the deposit liabilities of the Peru Savings Bank as specified in this contract and according to the schedules attached hereto and made a part hereof."

The contract also contained many other provisions which need not be mentioned.

Pursuant to the terms of the contract, the depositors of the Peru Savings Bank were paid in full, out of money advanced by the three Winterset banks. As above stated, the Peru Savings Bank executed and delivered to each of the Winterset banks its note in

an amount equal to the sum advanced by each of such banks. The assets of the Peru Savings Bank were delivered to the trustees. The trustees were unable to procure sufficient funds from the liquidation of the assets delivered to them to discharge the notes given for the advances. made by the Winterset banks. Upon the application of the Peru Savings Bank, the appellant superintendent of banking was appointed receiver of the Peru Savings Bank. He brings this action to enforce the statutory liability of the stockholders of the Peru Savings Bank upon the shares of stock owned by them. The trial court entered judgment against all of the parties named by the receiver as stockholders for an amount equal to the par value of the stock held by them with the exception of Nora I. Beeler and Ruth Beeler. It is from the judgment of the court dismissing plaintiff's petition as to Nora I. Beeler and Ruth Beeler that this appeal is prosecuted.

I.   F. M. Beeler, deceased, was the owner in his lifetime of fifteen shares of stock in the Peru Savings Bank. He died intestate prior to the execution of the contract above referred to, leaving surviving him his widow, Nora I. Beeler, defendant herein, and Ruth Beeler, his daughter, likewise defendant herein. The widow was appointed administratrix of his estate. The administration of the estate has been closed. The fifteen shares of stock in the Peru Savings Bank were inventoried by the administratrix as property of the estate of her decedent. The shares of stock of the decedent were never transferred upon the stock books of the bank. In the final report the administratrix states that she has on hand a stated amount of cash, certain government bonds, and the fifteen shares of stock in the Peru Savings Bank above referred to. She states that she and her daughter, Ruth Beeler, are the only ones interested in the descent and distribution of such property, that they have had an accounting, and that Ruth Beeler has agreed to accept a stated sum of money in full satisfaction of her interests in the assets of the estate then remaining in the hands of the administratrix. Attached to the final report is a receipt signed by Ruth Beeler in which she acknowledges that full settlement has been had of her interests in the estate of the decedent.

So far as Ruth Beeler is concerned, the only claim made by the receiver is that she was subject to liability on account of the fact that she inherited ten shares of stock of the Peru Savings Bank from her father, F. M. Beeler. The mere showing that F. M.

Beeler passed away owning fifteen shares of stock in the Peru Savings Bank, leaving his widow and daughter as the ones entitled to take his property under the laws of descent and distribution, will not warrant the conclusion that the daughter became the owner of ten of the shares of stock owned by her father. Andrew v. Dunn, 202 Iowa 364, 210 N. W. 425. The record in the case indicates conclusively that Ruth Beeler did not become the owner of ten of the shares of stock owned by her father. It was competent for the widow and daughter to agree upon the disposition that should be made of the property of the decedent which remained after the discharge of the obligations of the estate. The widow and daughter agreed that the assets of the estate remaining after the payment of the obligations of the estate should be divided so that a named sum of money should be paid to the daughter and the remaining assets be the property of the widow. In this situation it is obvious that Ruth Beeler did not become the owner of any of the shares of stock belonging to her father. The action of the trial court in dismissing the petition as to Ruth Beeler was undoubtedly correct.

II. Nora I. Beeler was the owner of five shares of stock of the bank. These shares appeared in her name on the stock books of the corporation. In addition to such shares of stock, the receiver sought recovery against her for seven and one-half shares of stock which came to her out of the estate of F. M. Beeler. In view of what has been said in division I hereof, we think it is apparent, and find, that Nora I. Beeler became the owner of the fifteen shares of stock of her husband, F. M. Beeler.

This appellee contends that, because the shares of stock of F. M. Beeler were never transferred upon the stock books of the bank to her name, she did not become the owner of such shares of stock and is not subject to statutory liability upon them. Notwithstanding the provisions of Code sections 9192 and 8386, title to shares of stock in a corporation may pass from one individual to another without transfer being made on the books of the corporation. The Des Moines National Bank v. Warren County Bank, 97 Iowa 204, 66 N. W. 154. Notwithstanding the fact that the ownership of Nora I. Beeler of the fifteen shares formerly owned by her husband was not of record upon the stock books of the corporation, she was the actual owner of such shares of stock. The statutory liability of stockholders of banks to an assessment is imposed by Code section 9251. The liability is imposed on "all stockholders". In this situa-

tion we think it clear that Nora I. Beeler was a stockholder within the meaning of the statute as to the fifteen shares of stock formerly owned by her husband. It is to be noted, however, that the receiver asked judgment against her on account of five shares of stock standing in her name on the books of the corporation and seven and one-half shares of stock obtained by her through her husband's estate, a total of twelve and one-half shares.

III. Appellees assume that the contract entered into between the Peru Savings Bank and the three Winterset banks provided for the complete liquidation of the affairs of the Peru Savings Bank, and contend that there was no occasion for the appointment of a receiver for the Peru Savings Bank. It is not necessary to examine appellees' contention in this respect to ascertain whether it is meritorious because the premises upon which the contention is based are not supported by the record. The contract did not provide for the complete liquidation of the affairs of the Peru Savings Bank. It provided only for the payment of the deposit liability of the Peru Savings Bank. If more than enough to pay the Winterset banks was collected by the trustees, the surplus was to be returned to the Peru Savings Bank, and, on the other hand, if an insufficient amount was collected, the notes of the Peru bank to the Winterset banks would remain partially unsatisfied. In no event could the performance of the contract effectuate the complete liquidation of the bank's affairs. The affairs of the bank could only be completely disposed of by voluntary, or involuntary, liquidation. The bank was in no condition to wind up its affairs by voluntary liquidation. The appointment of the receiver was proper. This holding is imperative under the rule announced by this court in Andrew v. Peoples Savings Bank of Des Moines, 216 Iowa 252, 249 N. W. 352.

IV. The receiver was appointed for the Peru Savings Bank before the trustees named in the contract had completed the liquidation of the property delivered to them under the contract. At the time the receiver was appointed, there was unpaid upon the three notes given to the Winterset banks a sum in excess of $30,000. The record is conclusive upon the proposition that the task of realizing enough money out of the property in the hands of the trustees to discharge the notes in full was hopeless. The record leaves no doubt but what an assessment of 100 per cent against the stockholders of the bank will prove insufficient to discharge the obliga-

tions of the bank. Appellees contend that the record does not disclose that any claims have been filed against the receiver and properly allowed and established by the court. The record does not disclose whether a time limit for filing claims had been fixed by the court. Neither does it disclose that the time limit for filing claims had expired. Neither does it disclose that claims have been either filed or allowed. The record is silent upon these matters. But the record does indicate conclusively that valid liabilities exist in an amount exceeding $30,000, and that the reasonable value of the assets of the bank added to a 100 per cent assessment on the stock does not equal the amount of the liabilities. In this situation it was proper for the trial court to make an assessment upon the stockholders of the bank.

V. This case was decided in the lower court prior to the determination by this court of the cases of Andrew v. Farmers State Bank of Fairfield, 215 Iowa 627, 246 N. W. 618, and Andrew v. Peoples Savings Bank of Des Moines, 216 Iowa 252, 249 N. W. 352. It was appellees' contention that they were released from liability to a stock assessment by virtue of the execution of the contract between the Peru Savings Bank and the three Winterset banks. It must be noted in this connection that appellees had nothing to do with such proceedings and appear to have taken no part as stockholders in the ratification of the same. Appellees' contentions in this respect are ruled by the cases above referred to, and are without merit.

Appellees urge that the transaction between the Peru Savings Bank and the three Winterset banks constituted a sale of the property of the Peru Savings Bank, and that they were thereby relieved from statutory liability upon their stock. We need not pursue this inquiry, for it is obvious that the transaction between the Peru Savings Bank and the Winterset banks was not a sale of the assets of the Peru Savings Bank. The contract contains some loose language. It is from such language that appellees seek to infer that the transaction was a sale. A reading of the entire contract, however, leads inevitably to the conclusion that the assets of the Peru Savings Bank were merely pledged to secure the payment of the funds advanced by the three Winterset banks.

VI. Prior to the appointment of the receiver, the Peru Savings Bank's charter expired. Appellees argue that their liability upon their shares of stock expired with the bank's charter. There

is no merit in this contention. The corporation remained in existence for the purpose of liquidating its affairs. We have held that the statutory liability may be enforced against the stockholders of a bank subsequent to the expiration of its corporate period of existence. Elson v. Wright, 134 Iowa 634, 112 N. W. 105.

We reach the conclusion that judgment should have been rendered against Nora I. Beeler as prayed by the receiver, consequently so much of the decree of the trial court as dismisses the petition as to her is reversed, and the cause remanded to the trial court for the entry of judgment against Nora I. Beeler in the sum of $1,250.00. As to the appellee Ruth Beeler, the decree of the trial court is affirmed.—Affirmed in part, reversed in part, and remanded, with directions.

EVANS, STEVENS, DONEGAN, and ANDERSON, JJ., concur.