L. A. ANDREW, State Superintendent of Banking, Appellant, v. G. L. SANFORD, Appellee.

No. 40379.

DECEMBER 13, 1930.

REHEARING DENIED APRIL 14, 1931.

John Fletcher, Attorney-general, and Calhoun & Calhoun, for appellant.

McBeth & Stong, for appellee.

ALBERT, J.—The facts in this case, as shown by the record, are that the Iowa Savings Bank of Douds was duly incorporated under the laws of the State of Iowa and doing a general banking business. The defendant, Grover L. Sanford, was originally the owner of one share of stock in said bank of the par value of $100, and his name so appeared on the books of the bank. On or about the 14th day of July, 1924, he sold this share of stock, in good faith, to R. C. Cramlet, receiving a valuable consideration therefor. Sanford went to the bank, advised the officers of the bank of the sale, and directed them to make a transfer of the same to Cramlet. Carson, the officer with whom the

conversation was had, said he would make the transfer on the books. With reference to this matter, Sanford testified that Carson "did not ask me to sign any written transfer of any kind at the time, nor at any time did he ever ask me to execute a written assignment of the stock."

After this transaction, all dividends on this share of stock were paid to Cramlet and the bank filed with the county auditor of its county a list of stockholders in which it did not list Sanford, but listed Cramlet as the owner of this one share of stock. The matter rested in this condition until November 15, 1928, when the bank went into liquidation and the receiver finding Sanford's name on the books of the bank as the owner of one share of stock, brought this action to recover the super-added liability.

Some other facts may be stated as throwing some light on the fact situation:

A. S. Sanford, father of the defendant, was originally the owner of this share of stock. He transferred it on the books of the bank July 17, 1911, to Grover L. Sanford, the defendant, and a new certificate was issued to the latter which was entered on the books of the bank. The bank seems to have kept no regular book showing the ownership of stock, but noted the same on the stubs of the stock certificate book.

Defendant testified that when this certificate of stock was issued to him, it was left with the bank and never, at any time, came into his possession and he never saw the same. The evidence shows that when the certificate was issued, the father receipted for the same and left it at the bank. Some officer of the bank testifies that he made search for the certificate, but it could not be found. The bank examiner urged the officers to make this transfer on the books, and in 1927 one of the officers prepared a duplicate certificate for this share of stock, wrote an assignment on the back thereof, with power of attorney to transfer the stock on the books of the bank, and presented the same to the defendant, at the same time demanding that he (defendant) execute a bond for $100. Sanford refused to do this, but did not refuse to sign any other papers. It is apparent from the testimony of this officer as a witness that he would not accept an assignment unless the bonds were issued.

302

The relief sought here is bottomed on the liability provided in Sections 9251 and 9252, Code, 1924, which read as follows:

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders.

"Section 9252. Should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each, not to exceed the extent of the additional liability hereby created."

It will be noted that the above-quoted section, 9251, provides that *all* stockholders of savings banks shall be liable, etc. The question for our determination therefore is, whether or not the defendant, Sanford, was a "stockholder" of this bank at the time it went into liquidation. To a proper determination of this question, the following sections of the Code of 1924 must be considered:

Section 8386. "The transfer of shares is not valid, except as between the parties thereto, until regularly entered upon the books of the company, showing the name of the person by and to whom transferred, the numbers or other designation of the shares, and the date of the transfer; but such transfer shall not exempt the person making it from any liability of said corporation created prior thereto."

Section 9192. "The capital of savings banks shall be divided into shares of one hundred dollars each, issued or acquired only upon full payment of the sums represented by them, transferable on the books of the corporation in such manner as shall be prescribed by law and in its by-laws. Stock owned by any corporation, association, or society may be transferred by any person authorized to do so by its board of directors or trustees."

Also, Article X, Section 1, of the articles of incorporation of this savings bank provided:

"The shares of stock in the corporation shall be issued only

upon the payment of the sum represented by them, and shall be transferable only by assignment on the books of the corporation.''

In Matteson v. Dent, 44 L. Ed., 571, the United States Supreme Court made the following concise statement:

''But the settled doctrine is that, as a general rule, the legal owner of the stock of a national banking association—that is, the one in whose name stock stands on the books of the association—remains liable for an assessment so long as the stock is allowed to stand in his name on the books, and, consequently, that although the registered owner may have made a transfer to another person, unless it has been accompanied by a transfer on the books of registry of the association, such registered owner remains liable. * * * True it is that exceptions have been engrafted upon this doctrine as to national bank stockholders by decisions of this court, but none of them are germane to the matter now considered. Cases enunciating certain of the exceptions referred to are cited in the following summary: * * * 2. Where a transfer of stock is made and delivered to officers of a bank, and such officials fail to make entry of it, the acts referred to will operate a transfer on the books, and extinguish the liability as stockholder of the transferrer'', citing Whitney v. Butler, 118 U. S. 655, 30 L. Ed., 266.

The Whitney case, above cited, was a case in which the bylaws of the bank provided that its stock could be assignable *only* on the books of the bank when the owner of the stock delivered the certificates to the purchaser, accompanied by power of attorney authorizing the transfer; that the stock was never in fact transferred on the books of the bank. In relation thereto the court said:

''Where the seller delivers the stock certificate and power of attorney to the buyer, relying upon the promise of the latter to have the necessary transfer made, or where the certificate and power of attorney are delivered to the bank without communicating to its officers the name of the buyer, the seller may well be held liable as a shareholder until, at least, he shall have done all that he reasonably can do to effect a transfer on the stock register. * * * Through their agents, the brokers, who sold the

stock, and through whom they received the money paid for it, they surrendered the certificates and power of attorney to the president of the bank, he receiving them, with knowledge not only that defendants had parted with all title to the stock and had been paid for it, but, also, that it had been purchased at public auction by Eager. He knew equally well that the surrender of the certificates and the delivery of the power of attorney and the certificate from the probate court could only have been for the purpose of having it appear, by means of a transfer on the books of the bank, that Whitney's executors were no longer shareholders. The right to have the transfer made, and thereby secure exemption from further responsibility, was secured to the defendants both by the statute and by the by-laws of the bank. They did all that was required by either as preliminary to such transfer. Nothing remained to be done except for some officer of the bank to make the necessary formal entries on its books. * * * No objection was made to the power of attorney, or to the discharge of the defendants from liability. So far as the record shows, nothing was said or done by the bank's officers to raise a doubt in the minds of the defendants' agents that the transfer would be made at once. It was suggested in argument that the defendants should have seen that the transfer was made. But we are not told precisely what ought to have been done to this end that was not done by them and their agents. Had anything occurred that would have justified the defendants in believing, or even in suspecting, that the transfer had not been promptly made on the books of the bank, they would, perhaps, have been wanting in due diligence had they not, by inspection of the bank's stock register, ascertained whether the proper transfer had in fact been made. But there was nothing to justify such a belief or to excite such a suspicion. Their conduct was, under all the circumstances, that of careful, prudent business men, and it would be a harsh interpretation of their acts to hold (in the language in some of the cases, when considering the general question under a different state of facts) that they allowed or permitted the name of Whitney to remain on the stock register as a shareholder. We are of the opinion that, within a reasonable construction of the statute, and for all the objects intended to be accomplished by the provision imposing liability upon shareholders for the debts of national

banks, the responsibility of the defendants must be held to have ceased upon the surrender of the certificates to the bank and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as that officer knew, a transfer of the stock, on the books of the association, to the purchaser."

It is further said in the Whitney case:

"But it will be found, upon careful examination, that in no one of the cases in which these general principles have been announced, as between creditors and shareholders, does it appear that the precaution was taken, after the sale of the stock, to surrender the certificates therefor to the bank itself, accompanied (where such surrender was not by the shareholder in person) by a power of attorney, which would enable its officers to make the transfer on the register. The position of the seller, in such case, is analogous to that of a grantor of a deed deposited in the proper office to be recorded. The general rule is that the deed is considered as recorded from the time of such deposit."

In Snyder v. Foster, 73 Fed., 136, the Fifth Circuit Court of Appeals had before it a case almost identical with the one before us. With reference to Whitney v. Butler, supra, that court said:

"That decision did not turn on the form of authority to make the transfer. It seems to have been the purpose of the court in that case to ground the opinion largely, if not entirely, on the broad doctrine that a shareholder in good faith, who has done all that a prudent business man should do, will not be held responsible for the neglect and carelessness of an officer of the bank. 'It is of the utmost importance that the liability of stockholders of national banks should be rigorously enforced, but, on the other hand, the court should not treat them with exceptional severity, and apply to their transfers different rules from those which obtain in other business transactions.' "

The general rule is that where the owner knowingly leaves his name on the stock books of the bank as a shareholder he is estopped to deny liability as against the creditors of the corporation in an action by them (after the failure of the bank) to recover the superadded liability. An application of this doctrine will be found in the following cases: State ex rel. Attorney

General, v. Ware, 198 Pac. (Okla.) 859; Sherwood v. Illinois Trust & Savings Bank, 62 N. E. (Ill.) 835; Man v. Boykin, 60 S. E. (S. C.) 17; Abilene State Bank v. Strachan, 132 Pac. (Kans.) 200; Aulbach v. Dahler, 43 Pac. (Idaho) 322; Harpold v. Stobart, 21 N. E. (Ohio) 637; Heldenfels v. Chapman, 283 S. W. (Texas) 179; Parker v. Brumder, 203 N. W. (Wis.) 941; Latimere v. Bennett, 146 S. E. (Ga.) 762.

Most of the above cases are cases where the stockholder did nothing to cause the transfer to be made on the books of the bank. However, South Carolina, Kansas, and Ohio do not recognize the exception hereinafter referred to, and Texas has one decision on each side of the proposition.

Where a stockholder has made a *bona fide* sale and has done everything in his power to comply with the statute, his liability ends, although, through fault or omission of the corporation, the transfer is not entered on the books of the bank. This has been the pronouncement of the courts as an exception to the general rule first above stated. This exception has been recognized and used as the basis of opinion in the following cases: Whitney v. Butler, 30 L. Ed. (U. S.) 266; Earle v. Carson, 47 L. Ed. (U. S.) 373; State ex rel. Attorney General v. Ware, 198 Pac. (Okla.) 859; Bracken v. Nicol, 99 S. W. (Ky.) 920; Weakley v. McClarty, 125 S. W. (Ky.) 265; Foster v. Broas, 79 N. W. (Mich.) 696; Green v. Ashe, 172 S. W. (Tenn.) 293; Corn v. Skillern, 87 S. W. (Ark.) 142; Bank of Midland v. Harris, 170 S. W. (Ark.) 67; Realty & Rebuilding Company v. Rea, 194 Pac. (Cal.) 1024; Realty & Rebuilding Co. v. Rea, 224 Pac. (Cal.) 1020; Citizens Bank v. Robinson, 234 Pac. (Wash.) 1025; Chapman v. Beeman, 265 S. W. (Texas) 243; Hunt v. Seeger, 98 N. W. (Minn.) 91; Warren v. Nix, 135 S. W. (Ark.) 896; Chemical National Bank v. Colwell, 30 N. E. (N. Y.) 644; see further 14 C. J., 1026.

Approximately all of these cases had either the identical provisions in their statutes or by-laws that are found in our statute on this question, and we are disposed to follow the great weight of authority on this and recognize and adopt the exception above specified.

The question here presented is before this court for the first time. The liability created by the above-quoted sections of the statute is the direct individual liability of each stock-

holder to creditors of a corporation of which avail can only be taken in case of the insolvency of the corporation. In other words, suit to enforce such liability can only be instituted after the corporation has gone into liquidation. As supporting appellant's contention, certain Iowa cases are cited, the first being Fort Madison Lumber Co. v. The Batavian Bank, 71 Iowa 270. This case was an attachment proceeding in which a levy was made on the stock of one Weston who had previously assigned the certificates as collateral security. The contention arose between the holder of the collateral· security and the attaching creditor. It in no way touches the question of super-added liability we have under consideration in this case.

Perkins v. Lyons, 111 Iowa 192, involves exactly the same situation as existed in the Fort Madison Lumber Company case.

Maloney v. Storjohann, 206 Iowa 721, deals with the construction of a statute where stock is placed as collateral security and the giving of notice under such statute. This case in no way bears upon the question we have before us.

In Ottumwa Screen Co. v. Stodghill, 103 Iowa 437, the stock was levied upon by execution and injunction was instituted to prevent the sheriff from selling the same. The holding is in line with the other Iowa cases where the question involved is the effort of a third party—the creditor of the original stockholder—to sequester the stock to the payment of such stockholder's debt. In other words, all of these cases involve a contest in which a bank, as a corporation, or the bank's creditors, are in no way involved, and are contests between a creditor of the original stockholder and the transferee of such original stockholder. The situation in those cases is therefore quite different from that in the case at bar and involves different statutes. We might say in passing that the Iowa rule holding that unless the transfer is entered on the books of the corporation, a levy will take precedence over the rights of a transferee, is contrary to the great weight of authority. See Note 97, 14 C. J., 755.

Having thus established the rule and adopted the exception thereto as above specified as governing the question of super-added liability, the question is: Does the defendant come within this exception under the facts in this case? There is no question that the sale made by the defendant to Cramlet was a *bona fide* sale. Then, did he do everything within his power to cause

the transfer to be made on the books of the bank? The certificate of stock was left with the bank and Sanford supposed it was in the bank's possession. He went to an officer of the bank and requested that it be transferred to Cramlet, whom he advised the bank was the purchaser thereof.

This officer promised that the transfer would be made. Defendant had a right to rely upon the promise of the officer and we do not see how he could have gone further. We think "his conduct, under all the circumstances, that of a careful, prudent business man", and it would be a harsh interpretation of his act to hold that so far as he was concerned, no transfer had been made and that he was liable for the super-added liability.

This is the conclusion reached by the district court and with it we agree.—Affirmed.

EVANS, STEVENS, FAVILLE, and DE GRAFF, JJ., concur.

WAGNER and KINDIG, JJ., concur on the ground of estoppel because the bank recognized the assignee of stock and paid him dividends accordingly.