L. A. ANDREW, Superintendent of Banking, Plaintiff, v. AMERICAN SAVINGS BANK & TRUST COMPANY, Defendant.

IN RE CLAIM No. 636 of FRANK J. RILING, Trustee, Appellant, L. A. ANDREW, Receiver, Appellee.

No. 42109.

922

Ben P. Poor, for appellant, Frank J. Riling, trustee.

Lane & Waterman, Jas. W. Bollinger, and A. W. Hamann, for appellee.

Powers, J.—The American Commercial & Savings Bank of Davenport, Iowa, and the Citizens Trust & Savings Bank of Davenport, Iowa, were each independently engaged in the banking business at Davenport. The Citizens Trust & Savings Bank was a relatively

small institution, having a capital of $150,000, and deposits of approximately $2,000,000. The American Commercial & Savings Bank was a much larger institution, having a capital of $1,500,000, and deposits of approximately $32,000,000. Affiliated with the American Commercial & Savings Bank of Davenport was an independent corporation doing a trust and investment business and known as the American Trust Company of Davenport, Iowa. All the stock in the American Trust Company was held by trustees for the benefit of the stockholders of the American Commercial & Savings Bank in the proportion that said stockholders owned stock in the American Commercial & Savings Bank. For brevity, these institutions will be referred to as the Citizens Bank, the American Bank, and the affiliate, respectively.

On April 27, 1931, the two banking institutions entered into a contract, subject to the approval of the stockholders of each institution, which was denominated *a plan of merger consolidation and capital readjustment.* This contract provided that the American Bank should purchase all the property of the Citizens Bank, subject to its liabilities, for a consideration to be paid to the stockholders of the Citizens Bank of $160 per share; that in order to effect the sale, the American Bank would increase its capital stock by 1,000 shares of the par value of $100 each, or $100,000, and make 923 of such additional shares available to the stockholders of the Citizens Bank at $260 per share; that the officers of the Citizens Bank would arrange and provide for the purchase by stockholders of the Citizens Bank of said 923 additional shares of the American Bank at $260 per share; that each stockholder of the Citizens Bank should have the privilege of subscribing to shares of the American Bank equal in number to the shares previously held by said stockholder in the Citizens Bank; that the $160 per share to be paid by the American Bank was to be made available as a liquidating dividend, but the proportion thereof to be given any stockholder of the Citizens Bank could be applied, first, as a payment on the subscription of any such stockholder to the capital stock of the American Bank; that the American Bank was to put three stockholders of the Citizens Bank on its board of directors; that the officers and employees of the Citizens Bank were to be taken over and given employment by the American Bank; that the shares of stock in the American Bank should carry with them a pro rata equitable interest in the outstanding stock of the affiliate; that "subject to the approval of the Banking Department, it is con-

templated" that the American Bank should change its name to the American Savings & Trust Company, or some other suitable name, that it would change its articles of incorporation so as to authorize it to exercise trust powers, and that the trust business of the affiliate should be taken over by the American Bank, that all other assets of the affiliate be taken over by the American Bank, except assets sufficient to support a capital of $160,000, that the affiliate should change its name to the American Company, should increase its capital stock from $100,000 to $160,000, and continue in operation only as an investment company.

The stockholders of the Citizens Bank were circularized and before the date set for the stockholders meeting enough subscriptions had been obtained for stock in the American Bank to insure the carrying out of the arrangement.

Thereafter, and on the 29th day of May, 1931, this contract was submitted to the stockholders of each of the banking institutions at a special stockholders meeting duly called to consider the proposition and was approved by each group of stockholders; and on that day, or the following day, all the assets of the Citizens Bank were moved over and became a part of the assets of the American Bank, and the American Bank assumed all the deposit liabilities of the Citizens Bank.

Frank J. Riling, the claimant herein, and his wife owned forty-five shares in the Citizens Bank. He subscribed for the same number of shares in the American Bank, and on June 10th paid the additional $4,500 to complete the purchase.

The American Bank changed its name, as contemplated by the contract, increased its capital stock, acquired trust powers, and took into its organization the officers and employees of the Citizens Bank, and assumed the deposit liabilities of the Citizens Bank. All the things which the contract provided should be done were done except that the transfer of the trust business from the affiliate to the American Bank was not made and the capital stock of the affiliate was not increased and its name was not changed, as contemplated by the contract.

The American Bank and its affiliate continued to operate without objection or complaint on the part of Mr. Riling or his wife, or any other stockholder who had been a stockholder in the Citizens Bank, or any other person until the first day of October, 1931, when insolvency proceedings were instituted against the American Bank,

and the superintendent of banking placed in charge of the bank for liquidation as an insolvent institution. Thereafter, Riling having succeeded to the rights of ·his wife, filed a claim in the receivership proceedings for $11,700, or the liquidating dividend on the forty-five shares of stock in the Citizens Bank at $160 per share, and the $4,500 represented by the check which he sent to the president of the Citizens Bank as a subscription for additional stock in the American Bank, and a preference was asked in payment of said claim on the theory that the amount was a trust fund in the hands of the American Bank. Claimant also alleged in a separate count of his claim that the assets which the American Bank had taken over from the Citizens Bank were held in trust by the American Bank for the creditors of the Citizens Bank and asked that his claim be established against them. The claim was rejected by the receiver and the action of the receiver confirmed by the court after hearing had; and from that ruling this appeal was taken to this court.

■ ■■■ I. It is urged that the American Bank took the $4,500 and the liquidating dividend on the Citizens Bank stock, amounting to $7,200, in trust for a special purpose, viz: to hold the same for investment in the stock of the new financial institution to be formed in the merger and consolidation. The difficulty with this contention is that it does not fit the facts in this case, and the principle invoked cannot, therefore, be applied here. There was no new financial institution provided for by the contract, or described in appellant's stock subscription. The so-called merger agreement provided for the purchase of the assets of the Citizens Bank by the American Bank and that shares in the American Bank should be made available to the stockholders of the Citizens Bank. The claimant signed a subscription for stock in the American Bank. This subscription is as follows:

"The undersigned, hereby subscribes for 45 shares of stock in the American Commercial and Savings Bank of Davenport, Iowa, at a price of Two Hundred Sixty ($260.00) Dollars per share, and as part payment of the purchase price of the above stock, hands you herewith 45 shares of stock in the Citizens Trust & Savings Bank of Davenport, Iowa, properly endorsed, at a price of One Hundred Sixty ($160.00) Dollars per share, and the balance due on the purchase price of the American Commercial and Savings · Bank stock in the sum of Forty-five Hundred ˣ $4,500 Dollars shall be paid by me on or before the 10th day of June, 1931.

"This agreement is in accordance with the plan of merger of the above referred to banks.

"Dated at Davenport, Iowa, this 25th day of May, 1931.

[Signed] F. J. Riling

ˣissue certificates as follows
20 shares to Alice J. Riling
25 shares to Frank J. Riling."

On June 9th the claimant, who lived in Burlington, Iowa, sent to the Citizens Bank for the attention of the president of the bank a letter which is as follows:

"Herewith my check for forty-five hundred ($4,500.00) dollars, certified, in payment of balance due on forty-five (45) shares of stock, American Commercial and Savings Bank, and certificates to be issued in accord with my subscription."

Enclosed in this letter was a certified check for $4,500 drawn on a Burlington bank which recites:

"Pay to the order of American Commercial and Savings Bank, Davenport, Iowa, $4500.00."

This check was on June 10th, the day on which the stock subscription provides settlement should be made, turned over by the president of the Citizens Bank to the American Bank. The American Bank issued its receipt acknowledging that it had received certificates for forty-five shares of stock in the Citizens Bank and the sum of $4,500 "in payment of forty-five shares American Savings Bank & Trust Co. stock".

Nowhere in the negotiations or the proceedings is there any reference to the creation of a new financial institution and the documents which claimant signed clearly indicate a purchase by him of shares in the American Bank. It is true the American Bank was to change its name from American Commercial & Savings Bank to American Savings Bank & Trust Company and was to, acquire trust powers. That however was done. It may be that if the funds were turned over to the American Bank to be invested in the stock of a new corporation when formed, that the transaction might have created a trust and the bank would be only a trustee of the fund, pending its investment in accordance with the instruction. But the transaction in the instant case was not that kind of a transaction, and the authorities sustaining the contention are, therefore, not ap-

plicable. What claimant subscribed for and what he sent his check to pay for was stock in the American Bank.

 II. It is urged on behalf of the claimant, also, that an offer or contract to become a shareholder in a corporation does not become binding or create liability until all conditions precedent have been performed. The correctness of this rule may likewise be conceded. It is well established that where one subscribes for stock in a corporation to be formed, subject to certain conditions, that it must be shown that the conditions have been complied with before the subscription contract can be enforced. This rule, however, seems to be chiefly applicable to corporations to be formed for the accomplishment of a particular purpose, but if it be conceded that it applies equally to a subscription to stock in a corporation already formed, it can avail claimant nothing. There is no attempt in this action to enforce a subscription contract. We are not dealing with an executory subscription contract. The claimant has paid his money to the corporation in accordance with the terms of his subscription and the corporation issued him a receipt showing that he had purchased and fully paid for forty-five shares of stock in the corporation. The subscription contract has been fully performed. Our inquiry is limited to a consideration of the question as to whether the consideration paid to the American Bank for shares in the American Bank became the property of the American Bank.

III. But it is urged at this point that it could not have become the bank's property because the bank did not issue to the claimant certificates covering these forty-five shares and it seems to be claimant's theory that the money would not become the bank's money until the certificates covering the shares had been issued. The answer to this contention is that one may be a stockholder in a corporation even though certificates covering the shares have not been issued to him. The certificates are not the shares but only evidence of the shares. Morrow v. Gould, 145 Iowa 1, 123 N. W. 743, 25 L. R. A. (N. S.) 384; Pacific National Bank v. Eaton, 141 U. S. 227, 11 S. Ct. 984, 35 L. Ed. 702.

The circumstances surrounding the transaction and the reason the certificates for the shares were not issued to claimant do not indicate an intention on the part of anyone connected with the transaction to regard the purchase as incomplete. Claimant on May 25th had signed a subscription for forty-five shares in the American Bank, which called for final settlement on June 10th. On June 9th,

he made out a check to the American Bank for the amount required of him to complete the purchase and mailed it to the Citizens Bank for the attention of its president, for the obvious purpose of complying with his subscription contract. This check was turned over to the American Bank. The American Bank issued its receipt for said sum and for certificates covering forty-five shares in the Citizens Bank in payment for forty-five shares in the American Bank. The American Bank entered on the stock ledger maintained by it appropriate entries to show claimant owned forty-five shares of its capital stock, and mailed to claimant on July 1st following, a dividend on forty-five shares. The failure to deliver the certificates for the shares was not due to the fact that claimant was not regarded as a stockholder.

The American Bank had a new form of certificate printed with the obvious intent of using it in issuing certificates to all those who acquired stock in connection with the transaction by which the Citizens Bank was acquired. As settlements were made for shares, these certificates and the stubs thereof were filled out. They were filled out to cover claimant's shares. They were not, however, signed by the officers, nor sealed with the corporation seal, nor were they detached from the stock book, and, of course, they were not delivered. No deliveries were made of certificates to other stockholders who had acquired stock in connection with the acquisition of the Citizens Bank. The reason was that the certificates not only described the American Bank by its new name, but had an indorsement on the back thereof specifying the interest of the stockholder in the affiliate, described as the American Company, the name it was proposed to give it after it had been divorced from its trust powers. Since the trust powers of the affiliate had not been surrendered and therefore no change made in its name to reflect that fact, the certificates were inappropriate for use. For that reason, the certificates were not issued. New ones were not prepared apparently because the officers still believed a way could be found to transfer the trust business from the affiliate to the bank. Where one subscriber for stock in a corporation pays for it, receives a receipt from the corporation that he has paid for the shares, he is a stockholder irrespective of whether certificates have been issued to him or not. Thayer v. Butler, 141 U. S. 234, 11 S. Ct. 987, 35 L. Ed. 711; Lex v. Selway Steel Corporation, 203 Iowa 792, 206 N. W. 586. In this case, not only had all these things been done, but the corporation made the entries

in its stock ledger showing he was the owner of the shares and mailed him a dividend on the shares.

Our holding is that claimant was a shareholder. And, if he owned the shares in the corporation, it necessarily follows that the consideration which he paid to the corporation for the shares did not continue to be his property but became the property of the corporation. The fact that the consideration was the bank's property necessarily negatives the idea that it was held in trust by the bank for claimant.

IV. It is further contended that the subscription contract was a part of the plan of merger and consolidation and its execution should be dependent upon the performance of the merger agreement, and that the president of the Citizens Bank should not have turned over to the American Bank the $4,500 check of claimant and his certificate for shares in the Citizens Bank until the merger agreement had been fully performed. That his action in turning over such check and shares when he did was, therefore, unauthorized and wrongful, and on that account was ineffective to transfer title. We may assume for the purpose of this opinion that claimant's theory is correct to the extent that the execution of the subscription contract was dependent upon the performance of the merger contract. This brings us to the question as to whether the merger agreement had been performed. Since that question is the one on which the claim that the American Bank took the assets of the Citizens Bank as trustee only must depend, it will be considered in connection with that claim in the sixth division of this opinion. What is said in that division with reference to the performance of the merger agreement is therefore equally applicable to the claim that the subscription contract should not have been executed because the merger contract had not been performed.

V. In view of the fact that we hold that claimant is not entitled even to the $4,500 which he paid by check, it is unnecessary to point out the obvious difference between his claim to that item and his less tenable claim to the item of $7,200, or the liquidating dividend on his forty-five shares of stock in the Citizens Bank. Suffice it to say that the payment to him of the $7,200 item could only be made on the theory that the merger contract was being performed. It is the amount the American Bank was to pay for the assets of the Citizens Bank, subject to its liabilities.

Claimant, therefore, seems to regard the merger contract, as performed, to the extent that there should be imposed upon the American Bank the obligation to pay $7,200 for claimant's stock in the Citizens Bank. Of course, that claim cannot succeed because even though the obligation to take the claimant's stock in the Citizens Bank at $160 per share arose out of the performance of the merger contract, that obligation, according to the terms of the contract, was not to pay claimant the money but credit it on claimant's purchase of stock in the American Bank. On the other hand, if the merger contract is to be regarded as wholly unperformed and the American Bank is to be deprived of title to what it received in the attempted performance, then certainly there would be no obligation at all on the part of the American Bank to take the stock of the Citizens Bank, either for cash or credit. Claimant could not possibly contend that the American Bank must suffer all the detriments of the merger contract and at the same time be deprived of its benefits. A rescission must be in toto. See 13 C. J. 623. This implied recognition by claimant of a performance of the merger contract may properly be kept in mind in connection with the consideration of that proposition in the following division of this opinion.

■ VI. In support of the claim that the American Bank should be regarded as the trustee of the assets received by it from the Citizens Bank, it is contended that the action of the American Bank in taking physical possession of such assets was so unauthorized, unlawful, and wrongful as to constitute the American Bank the trustee only of such assets. In other words, the contention seems to be that title to the assets of the Citizens Bank would not pass to the American Bank until all the provisions of the merger agreement were performed, and that some of those provisions were never performed. In considering this proposition, it should be borne in mind that the so-called merger contract had been approved by the stockholders of both the banking corporations; that the officers of the Citizens Bank had properly indorsed negotiable instruments and executed appropriate assignments, and voluntarily delivered all of said assets to the American Bank. There is some suggestion in the record that the Citizens Bank was particularly anxious to make the delivery because the withdrawals of deposits from it were rapidly assuming such proportions that it was anxious to have the American Bank assume the deposit liabilities. But however that may be, there is no question but what those assets were deliberately and voluntarily

delivered to the American Bank by the officers of the Citizens Bank, and that thereafter, until it closed, the American Bank met the deposit liabilities which it had assumed from the Citizens Bank as demanded and paid out several thousand dollars on such deposit liabilities. What then is the basis of the claim that the action of the American Bank was wrongful? It rests upon the contention that certain other provisions of the merger contract had not been carried out and assumes that until all of those details had been carried out there was no authority under the contract for the transfer of the assets from the Citizens Bank to the American Bank. This requires a further examination of the merger contract, the situation of the parties, and the extent of the alleged breach.

The contract was between the American Bank and the Citizens Bank. The affiliate was not a party to it. The essence of the contract, when considered in the light of its purpose as well as its terms, was the purchase by the American Bank of the outstanding stock of the Citizens Bank to be paid for by the issuance by the American Bank of nine hundred twenty-three additional shares of its own stock and the taking into the employ of the American Bank the officers and employees of the Citizens Bank. While the contract is denominated a plan of merger consolidation and capital readjustment, and it attempts to preserve the fiction that the American Bank is paying to the stockholders of the Citizens Bank a liquidating dividend of $160 per share, yet, the contract also provides that the officers of the Citizens Bank undertake to place among its stockholders nine hundred twenty-three shares at $260 a share of the additional capital stock which the American Bank is to issue. It will be observed that the nine hundred twenty-three shares at $260 a share lacks only $20 of being sufficient to pay for the fifteen hundred shares of Citizens Bank stock at $160 a share, so that, in effect, what was being accomplished was the taking over of the Citizens Bank by the American Bank on the basis of an exchange of stock with a provision for the placing of the officers and employees of the Citizens Bank with the American Bank, and no complaint is made that those provisions of the contract were not fully and faithfully carried out.

The incorporation in the contract of a provision as to what should be done with reference to some readjustments between the American Bank and its affiliate, obviously, is somewhat foreign to the clear purpose of the contract. So far as the substance of the

thing is concerned, it could make little difference to the stockholders of the Citizens Bank whether the trust business was handled by the American Bank directly or through a wholly owned subsidiary. The profits of the business would inure to their benefit to the same extent in either case. Its inclusion in the contract is explained by the fact that the American Bank had long contemplated such a transfer of the trust business and believed that the taking over of the Citizens Bank was an opportune time in which to make the transfer. There is nothing whatever to indicate that it was to the slightest degree a part of the consideration for the contract so far as the stockholders of the Citizens Bank were concerned, and it is not by its terms made a part of the consideration for the contract, nor is it made a condition to the carrying out of the contract. On the contrary, the language used in the contract with reference to it clearly negatives that idea.

The contract, after reciting what each party thereto undertakes to perform, contains the recitation that, *subject to the approval of the banking department, it is contemplated* that the trust business now in the affiliate shall be transferred to the American Bank and all other assets of the affiliate except assets amounting to $160,000. and that the capital of the affiliate shall be increased to one thousand six hundred shares of $100 each, and the affiliate shall function as an investment company only and its name changed to reflect its loss of trust powers. There is no language to suggest that the taking over of the assets of the Citizens Bank is to be in anywise contingent upon the ability of the parties to carry out this provision. Obviously, the provision according to its very terms is dependent upon the approval of the banking department, and the evidence shows that the banking department refused to sanction the taking over of the trust business by the American Bank, and for the very good reason that the affiliate had outstanding $3,000,000 in debentures which were incident to its trust business and the payment of which would have to be assumed by the American Bank. The failure, therefore, to carry out the provisions with reference to the affiliate was due to the absence of a condition which the contract itself provided should be present before that provision should be carried out, viz: the approval of the banking department.

We hold that both the subscription contract and the merger contract were fully performed. It follows that what the American Bank received in carrying out these contracts became its property.

■ Appellant does not dispute the proposition that he got the same benefits he would have received if the trust business had been transferred from the affiliate to the American Bank. He contends, however, that the failure to transfer the trust business leaves the stock in the affiliate assessable and that he will be subjected to an assessment on the stock of the affiliate, that if the affiliate had been deprived of its trust business and become an investment company only, the stock would not have been assessable and he would not be subject to such assessment, and that this constitutes the injury to him of a failure to transfer the trust business, and that by reason thereof, the provision with reference to the affiliate became an important and substantial part of the contract. It can hardly be claimed that this situation was within the contemplation of the parties when the contract was made; and it probably could not be made controlling in any event if, as we hold, the contract was fully performed according to its terms. We believe, however, that the argument is untenable for the further reason that it contains a non sequitur. From the fact that claimant received certain benefits provided for by the contract to which he was a party, it does not follow that he must be subjected to liabilities which were not provided for by the contract and which were not within the contemplation of the parties when the contract was signed. The contract provided that claimant was to have a pro rata "equitable interest" in the stock of the affiliate. This contract was approved by the stockholders of the American Bank who were such stockholders on the 29th of May, 1931. The effect of this provision was to reduce the equitable interest of such American Bank stockholders in the stock of the affiliate. There is nothing in the contract, however, which would indicate a purpose to have the claimant and those similarly situated assume any of the burdens incident to the ownership of said stock. Indeed, there is much in the contract to negative such an assumption. One may hold an equitable interest in assessable stock without being liable for the assessment. It is uniformly held that one who acquires an equitable interest as security for a debt is not liable where the stock has not been transferred to him as owner on the books of the corporation. Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844; Rankin v. Fidelity Ins., Trust & S. D. Co., 189 U. S. 242, 23 S. Ct. 553, 47 L. Ed. 792; Note 36 L. R. A. 140.

We are not disposed to base any conclusion on the assumption that claimant and those similarly situated are liable for an asses-

ment on the stock of the affiliate because we do not regard it as at all certain that they are liable for such assessment or that the liability for an assessment on the stock of the affiliate has been in any manner affected by the contract of merger under the peculiar circumstances of this case.

VII. Our holdings on the foregoing propositions dispose of this appeal. It should be observed, however, that even if there had not been a full performance of the merger contract, and the subscription contract was obviously an incident to and a part of the merger contract, the result could not have been different. What is done by parties to a contract in an effort to perform the contract is not void because of inability of the parties to complete performance, especially where the parties have made a good faith effort to perform and a substantial part of the contract has been performed. Where one party to a contract fails to fully perform, the other party may waive the partial nonperformance, or may, if the breach is sufficiently serious, elect to rescind. In other words, the contract and what has been done to perform it is not in that situation void, but only voidable. Blake v. Osmundson, 178 Iowa 121, 159 N. W. 766; Mueller Lumber Company v. McCaffrey, 141 Iowa 730, 118 N. W. 903; Stone v. Walker, 201 Ala. 130, 77 So. 554, L. R. A. 1918C, 839. But until the party who has a right to avoid the contract and to rescind it because of the nonperformance of the other party does something to effect rescission, until he exercises the option to affirm the contract or rescind it, what has been done under the contract and in a good faith attempt to perform it must be regarded as valid and not void. In this case nothing whatever was done to accomplish rescission before the assets of the American Bank passed into the hands of the receiver. The title to the property which the American Bank received from the Citizens Bank must, therefore, have been in the American Bank when the receiver took charge, even if the merger contract had been so substantially nonperformed by the American Bank as to give the other party the right to rescind.

There probably could not have been a rescission in this case even though an attempt had been made to do so. Rescission both at law and in equity is regarded as an extreme remedy. It is not permitted in every case where one party has failed to fully perform. It will be allowed to one party only where there has been such nonperformance on the part of the other party as to practically defeat

the whole purpose and object of the contract. 13 C. J. 613; Weintz v. Hafner, 78 Ill. 27; Myer & Dostal v. Wheeler & Co., 65 Iowa 390, 21 N. W. 692; White v. Massee, 202 Iowa 1304, 211 N. W. 839, 66 A. L. R. 1434; Burge v. Railway Co., 32 Iowa 101; Stevenson v. Polk, 71 Iowa 278, 32 N. W. 340; Callanan v. Keeseville, Ausable Chasm & L. C. R. Co., 199 N. Y. 268, 92 N. E. 747. Could it be said that the nonperformance on the part of the American Bank was of that character in any event? Who would say that the purpose and object of the contract between the Citizens Bank and the American Bank failed because the American Bank continued to handle a part of its trust business through a wholly owned subsidiary rather than directly by the bank itself? The only reason suggested for having the trust business transferred to the American Bank was that it was thought that the small capitalization of the trust company prevented its selection as trustee for some of the larger trusts, and that the bank with its larger capitalization would be in a better competitive position in securing that type of business. In this connection it should be borne in mind that the bank acquired trust powers in pursuance of the merger agreement and was qualified for selection as trustee, and had acquired some trust business. So that in so far as the larger capitalization of the bank was regarded as being an advantage in the securing of future trust business is concerned, that purpose was being achieved.

We have already called attention to the fact that there was no effort to rescind in this case before the appointment of a receiver. There was not afterwards unless the filing of the claim can be said to be a notice of rescission. Mueller Lumber Co. v. McCaffrey, 141 Iowa 730, 118 N. W. 903; Supple v. Iowa State Insurance Co., 58 Iowa 29, 11 N. W. 716. But that claim does not proceed on the theory of a rescission. It alleges that the American Bank took the money for its stock and the assets of the Citizens Bank originally as trustee only. Moreover, as previously pointed out, so far as that claim asks for the liquidating dividend on the Citizens Bank stock, it is a confirmation of the contract, not a repudiation of it.

■■■ But if it be assumed that the filing of that claim was an attempt to rescind the contract, it would be futile. That so-called merger contract was in its essence a stock subscription contract. By its terms, the American Bank was acquiring the assets of the Citizens Bank, subject to its liabilities for nine hundred twenty-three shares of its own stock. This court has held that a contract

of subscription for stock in a corporation cannot be rescinded after a receiver has been appointed for the corporation where there are creditors whose claims arose after such subscription. Lex v. Selway Steel Corporation, 203 Iowa 792, 206 N. W. 586. In the instant case, the depositors in the Citizens Bank became creditors of the American Bank not only after that contract but directly because of it. In view of this situation, there could be no rescission after the receiver was put in charge of the property of the American Bank.

 There is still another difficulty so far as a rescission of the merger contract is concerned. That contract was between the two banking institutions. If there had been a failure on the part of the American Bank to perform a substantial part of that con-tract, the option of waiving the partial nonperformance or seeking rescission because of such nonperformance was in the other party to the contract, viz: the Citizens Bank. It did nothing before or after the receivership to effect a rescission. Claimant in this case, who was only one of many stockholders in the Citizens Bank, could not rescind that contract for nonperformance. Where a corporation has entered into a contract, and there has been a performance of that contract satisfactory to the corporation, it would be strange doctrine to permit one of several stockholders of the corporation to rescind that contract. Some of the stockholders might want to affirm. In this very case two stockholders of the Citizens Bank who did not take stock in the American Bank were paid their liquidating dividend, amounting to over $10,000. Could claimant, by rescinding the merger agreement, make them liable to pay back what they re-ceived? It is obvious that an individual stockholder could not rescind a contract made by the corporation, and especially in a case of this kind.

Much is said in argument in the case on behalf of claimant concerning alleged frauds which induced claimant to enter into the subscription contract. This claim is based, first, upon statements made by the president of the Citizens Bank in a letter to claimant as to the earnings of the American Bank, past and prospective, and, second, upon the alleged falsity of the bank statement of the Ameri-can Bank in failing to show its holdings of other real estate, the real estate having been taken out and directors' note substituted for it.

As to the letter from the president of the Citizens Bank, there is no theory suggested to us which would make the American Bank

responsible for those statements. But if we assume it was responsible, it does not appear that the statements in the letter as to past earnings were false, and the statement with reference to future or prospective earnings, obviously, was only the expression of an opinion.

As to the bank statement, there is no evidence that the claimant was influenced to subscribe by reason of the statement. But, in addition to that, false statements, even if made, do not render a contract void but only voidable. A party may waive the right to rescind because of false statements inducing the contract, just as he may waive the right to rescind because of partial nonperformance and insist upon the contract. The contract and what was done in pursuance of it, therefore, must be treated as valid until the party having the right of rescission because of the fraud takes some action to accomplish rescission. What we have said above with reference to rescission because of nonperformance is equally applicable to rescission because of false representations leading up to the making of the contract.

There is still a further reason why there could not have been an effective rescission of this contract if considered as one, or either of them, if considered as two. If there had been an attempt to rescind either of these contracts, it would have been necessary, in order to effect such rescission, that the American Bank be put back in the position it occupied before performance was attempted. In other words, to restore the status quo. Reiger v. Turley, 151 Iowa 491, 131 N. W. 866; Stauffer v. Mathison Motor Co., 207 Iowa 1038, 221 N. W. 918; Messenbrink v. Bliesman, 204 Iowa 223, 215 N. W. 232. No attempt to do that was, of course, made in this case. Under the circumstances, it probably could not have been done. It is true that claimant offered to return the dividend he received on his stock, but this would not even approach a restoration of the status quo. The American Bank had paid out several thousand dollars to depositors of the Citizens Bank in pursuance of the merger. No offer was made to restore that.

These several propositions briefly considered in this division of the opinion constitute barriers which make it impossible to reach the conclusion that the property received by the American Bank did not become the property of the American Bank even though it should be conceded that there was not full performance of the merger agreement.

We have examined the record and the suggestions of able counsel on both sides with care. We recognize the unfortunate position in which claimant is placed. As a business venture, the merger of the Citizens Bank with the American Bank may have been, and probably was, improvident so far as the stockholders of the Citizens Bank were concerned. But if the merger arrangement and what had been done in pursuance of it were valid while the American Bank was a going concern, they could not be rendered invalid by the closing of that bank four months later. That unfortunate result from a business standpoint cannot affect the validity of the arrangement previously made and executed from a legal standpoint. We see no escape from the conclusion of the trial court and are of the opinion that the order of the trial court disallowing appellant's claim should be and it is hereby affirmed.

All Justices concur, except DONEGAN, J., who took no part.