D. W. BATES, Superintendent of Banking, Appellee, v. FIRST TRUST & SAVINGS BANK of Sioux City and GEORGE M. PARADISE et al., Appellants.

No. 43561.

OCTOBER 27, 1936.

Berry & Berry, for George M. Paradise, appellant.

Griffin & Griffin, for appellee.

ALBERT, J.—The above-named bank at Sioux City closed its doors and a receiver was appointed for it in December, 1931. In March, 1932, a petition in equity was filed alleging the insolvency of the bank; that its assets, plus the one hundred per cent assessment on all stockholders, would not produce sufficient to pay the debts of the corporation; and asking judgment against George M. Paradise, as a stockholder, for one hundred per cent superadded liability under the aforesaid section of the statute. The case was tried, and as here presented the first question in the case is whether or not George M. Paradise ever became a stockholder in said bank within the meaning of said section of the statute.

The record shows that one Olof Nelson was president, and C. A. Norrbom was cashier of said bank at all times involved herein, and that Nelson was the owner of 525 shares of stock in said corporation. In December of 1929, or January of 1930, Nelson and Norrbom both talked to the appellant about purchasing stock in said corporation; and Paradise testifies that in the latter part of January "we arrived at an agreement to buy stock in the bank". He further testifies that: "My understanding was that the bank had some stock to sell." The agreement was oral. "I did not know or understand that I was buying stock owned by Nelson. Nelson said he thought it would be wise to buy stock of the bank, and there was some stock in the bank that I could buy, that they had issued additional stock in 1919, as I recall it, and there was some stock of that left. I never agreed to buy stock, and never understood that I was buying stock that was owned by Nelson."

Nelson testifies: "I think I suggested or mentioned to him (Paradise) that he should buy about ten shares of stock. Q. Did you ever tell Mr. Paradise that the bank would sell him some stock? A. I don't think so because they had none to sell and I had plenty."

Neither Nelson nor Norrbom, although they both talked to Paradise about selling him stock, ever told him that they proposed to sell him stock that belonged to Nelson. The record shows that Nelson was disposing of part of his stock in the bank, and apparently was attempting to get from under liability by disposing of his stock.

It is apparent from the reading of this record, without setting out the testimony in detail, that at all times Paradise was

led to believe, and he understood, that he was buying this stock directly from the bank and not from Nelson. He is confirmed in this understanding by the checks (four in number) which he issued as part payment of this stock, because each of them is payable to the bank and not to Nelson. Paradise testifies that if he had known and understood that he was buying stock that belonged to Nelson he would not have bought the same. He is confronted, however, with the original stock book of the corporation, which shows that on January 17, 1930, he receipted for ten shares of stock. His claim is that at the time he signed the stub in said stock book, neither the stub nor the original certificate of stock was filled out. His claim is that his signature therein appearing was put on after the date that appears, and that the certificate of stock introduced in evidence, by which he is alleged to have become the owner of ten shares of stock, was filled in without his knowledge or consent. It is admitted that this said certificate never left the hands of the bank and was there at the time the receiver was appointed. Paradise testifies that it was never delivered to him, and the officers of the bank confirm him in this statement.

This is a rough statement of the record most favorable to the appellant.

In the application of Code section 9251 we have said that the question is, who is the real owner of the stock, even though it has not been transferred on the books of the corporation. Andrew v. Sanford, 212 Iowa 300, 233 N. W. 529; Bates v. Peru Savings Bank, 218 Iowa 1320, 256 N. W. 286; Andrew v. Peoples Saving Bank, 211 Iowa 649, 234 N. W. 542; Andrew v. American Savings Bank & Trust Co., 219 Iowa 921, 258 N. W. 911.

The question at this point, therefore, is: Who is the actual owner of this stock? It appears from the record that Nelson held a certificate for fifteen shares of stock, and that he presented the same to the corporation and new certificates were issued by splitting the original certificate and making one to Paradise for ten shares and the other to Nelson for five shares. The date on which this occurred is left in doubt under the record. The original contract between these parties was oral. The record is quite satisfactory that Paradise agreed to buy ten shares of stock in the corporation. The point of divergence is whether or not he was buying ten shares of stock that belonged to the corporation, or ten shares of stock that belonged to Nelson.

We have this situation, then—that Nelson was intending to sell Paradise ten shares of stock that belonged to him; and we think that the record fairly shows that Paradise understood that he was buying ten shares of stock that belonged to the corporation itself.

With this situation we advert to the primary principle underlying all contracts, to wit, that in order to make a good contract there must be a mutual meeting of the minds, on the same thing at the same time. We are satisfied from this record that there never was a time when the minds of the officers of the bank and Paradise met on the same proposition. In other words, as above stated, Nelson, without so advising Paradise, was attempting to sell his own stock to Paradise; and on the other hand, Paradise understood at all times that he was not buying stock that belonged to Nelson, but that he was buying stock that belonged to the corporation. It follows, therefore, that there never having been a meeting of the minds on this proposition, no contract was made. It therefore follows that Paradise is not the owner of the stock, and that Nelson is.

Appellee argues that Nelson is not an interested witness because the result makes but little difference to him. With this we cannot agree. It makes just one thousand dollars difference to him. That is, if Paradise is compelled to pay the assessment on these ten shares of stock on the par value of one hundred dollars each, Nelson will be relieved from such payment. He is, therefore, very materially interested in the outcome of this case.

We think the court was wrong in its conclusion and that what the bank itself may have done, without the knowledge or consent of Paradise as to reporting him as a stockholder to the state department and so noting him on the records, is not binding on him.

Paradise had made a $400 payment on this contract by checks drawn payable to the bank and which the bank records show eventually went into an account belonging to Nelson. He counterclaims in this matter, asking to recover the $400. We do not think he is entitled to it under the record in the case, if for no other reason than that the claim for the $400 was not filed with the receiver within the time ordered by the court.— Reversed.

MITCHELL, KINTZINGER, DONEGAN, HAMILTON, ANDERSON, and STIGER, JJ., concur.