D. W. BATES, Superintendent of Banking, Appellant, v. AMERICAN SAVINGS BANK et al., Appellees.

No. 43877.

SEPTEMBER 28, 1937.

Drake & Wilson, for appellant.

Fishburn & Fishburn and R. S. Jackson, for appellees.

RICHARDS, J.—Appellant, receiver of American Savings Bank of Muscatine, demanded judgment against Cora Noble, appellee, for an assessment of one hundred per cent on $2400 of the capital stock of said bank. The action is founded on section 9251, Code 1931, to which further reference will be made. The bank being insolvent suspended business on September 19, 1931, and appellant was appointed as its receiver. He claims that when the bank closed Cora Noble was a stockholder to the extent of twenty-four shares within the meaning of section 9251. Appellee denies that such was the fact and asserts that she has not been such stockholder or the owner of said stock subsequent to March 1, 1927. Upon this one issue the case was tried. The court found for appellee and dismissed the action. The receiver has appealed.

■■■ The salient facts, underlying the controversy, are not complex. We find, from the record, that on March 1, 1927, Cora Noble owned twenty-four shares of the stock of this bank, par value $100 per share, represented by five stock certificates that had been issued to her. On the last mentioned date she sold these shares to her husband, A. C. Noble, accepting therefor his promissory note for $2400. Appellee had accumulated the stock in five small blocks between the years 1912 and 1921. On March 1, 1927, the certificates were scattered, some being in the home and some in the bank. One certificate was assigned to A. C. Noble in December, 1930, and the remaining four in August, 1931. When the bank closed its doors the five certificates endorsed to A. C. Noble were in his possession. None of them had been surrendered for cancellation and no new certificates to A. C. Noble had been issued. The stubs in the bank's stock-certificate book showed that the twenty-four shares were held in the name of Cora Noble when the receiver was appointed. A. C. Noble was one of the directors of this bank from 1922 until it closed in 1931. He informed the active officials of the bank of his pur-

chase of the stock from his wife. It also appears that subsequent to the purchase he voted the twenty-four shares personally at the stockholders' meetings during the several years before the bank closed, whereas previously he had voted them by proxy. This is shown by the testimony of A. C. Noble. In the minutes of the stockholders' meetings is found confirmation of this testimony although the minutes were carelessly kept and the showings therein are somewhat indefinite.

In 1928, at suggestion of an examiner, the directors of the bank voluntarily took out of the bank's assets some past due notes and substituted cash, excepting that A. C. Noble and perhaps one other director gave the bank their promissory notes instead of cash. Each director put up cash or his note for one-half of the amount of his stock. The note given by Noble to the bank represented 50 per cent of all the stock he owned including the twenty-four shares he had purchased from his wife. This note was a part of the assets of the bank when it failed. Cora Noble neither signed the note nor had any knowledge that the assessment had been made.

Section 9251, Code 1931, on which plaintiff brought this action, is in the following words:

"9251. Liability of stockholders. All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

This statute has been considered in several recent opinions of this court. In Bates v. First Tr. & Sav. Bank, 222 Iowa 407, 409, 269 N. W. 437, 438, it is said:

"In the application of Code section 9251 we have said that the question is, who is the real owner of the stock, even though it has not been transferred on the books of the corporation. Andrew v. Sanford, 212 Iowa 300, 233 N. W. 529; Bates v. Peru Savings Bank, 218 Iowa 1320, 256 N. W. 286; Andrew v. Peoples State Bank, 211 Iowa 649, 234 N. W. 542; Andrew v. American Savings Bank & Tr. Co., 219 Iowa 921, 258 N. W. 911."

We also said in Andrew v. American Savings Bank, 219

Iowa 921, l. c. 928, 258 N. W. 911, that one may be a stockholder even though certificates covering the shares have not been issued to him, and that the certificates are not the shares but only evidence of the shares, citing Morrow v. Gould, 145 Iowa 1, 123 N. W. 743, 25 L. R. A. (N. S.) 384; Pacific Nat. Bank v. Eaton, 141 U. S. 227, 11 S. Ct. 984, 35 L. Ed. 702. In Bates v. Peru Savings Bank, 218 Iowa 1320, 1324, 256 N. W. 286, 288, recovery under section 9251 was sought by the receiver of a failed bank against Nora I. Beeler, surviving spouse of decedent F. M. Beeler. The shares of stock still stood upon the books of the bank in the name of the decedent, but Nora I. Beeler had acquired the stock as part of her share of the estate. Nora I. Beeler contended that because the shares were never transferred upon the stock books of the bank to her name she did not become the owner of such shares and was not liable to the statutory liability imposed by section 9251. But this court said:

"Notwithstanding the provisions of Code sections 9192 and 8386, title to shares of stock in a corporation may pass from one individual to another without transfer being made on the books of the corporation. The Des Moines National Bank v. Warren County Bank, 97 Iowa 204, 66 N. W. 154. Notwithstanding the fact that the ownership of Nora I. Beeler of the fifteen shares formerly owned by her husband was not of record upon the stock books of the corporation, she was the actual owner of such shares of stock. The statutory liability of stockholders of banks to an assessment is imposed by Code section 9251. The liability is imposed on 'all stockholders'. In this situation we think it clear that Nora I. Beeler was a stockholder within the meaning of the statute as to the fifteen shares of stock formerly owned by her husband."

■■■ But plaintiff says that, although A. C. Noble may have been the actual owner of this bank stock and as such owner liable for the assessment, under the holdings in the above cited cases, yet Cora Noble is estopped to deny her liability because she accomplished no issuance of new certificates to A. C. Noble nor a cancellation of the certificates she held, with the result that at the time of the appointment of the receiver the stock records of the bank indicated that she was the owner of the twenty-four shares. In support of this proposition plaintiff relies upon Andrew v. Sanford, 212 Iowa 300, 233 N. W. 529. But this case,

viewed in the light of the later pronouncements of this court, already above cited, does not sustain the full import of plaintiff's contention. It will be observed that in Andrew v. Sanford, supra, it is stated that, to a proper determination of the liability of one whose name appears as a stockholder on the bank's records after an alienation of the stock, Code sections 8386 and 9192 must be considered. Section 8386 provides that a transfer of shares is not valid except as between the parties thereto until regularly entered on the books of the company. Section 9192 provides that the capital of savings banks shall be transferable on the books of the corporation in such manner as shall be prescribed by law and its by-laws. But in the later case of Bates v. Peru Savings Bank, 218 Iowa 1320, 256 N. W. 286, it is definitely held that: "Notwithstanding the provisions of Code sections 9192 and 8386, title to shares of stock in a corporation may pass from one individual to another without transfer being made on the books of the corporation." And it was held in that case that the statutory obligation to pay the assessment rested upon an actual owner in whose name the stock did not appear upon the bank's records. Following our later cases, we hold that section 9251 imposes the liability upon the actual owner, notwithstanding sections 9192 and 8386, which were given consideration in Andrew v. Sanford, 212 Iowa 300, 233 N. W. 529. Eliminating from the case last cited, Andrew v. Sanford, the consideration therein given sections 9192 and 8386 which do not affect 9251 as above indicated, the discussion and conclusions in the Sanford case with respect to estoppel would appear to rest upon authorities from other jurisdictions. These authorities are quite in agreement that the general rule of estoppel, set out in the Sanford case, has for its purpose the protection of a bank's creditors against fraud, imposition or sharp practices on the part of stockholders, by enabling the creditors to rely on the accountability of those held out to be the owners of the bank. In these authorities are recognized exceptions to the so-called general rule of estoppel. These so-called exceptions are found in cases where in the facts there is a lack of the essential elements of estoppel as ordinarily understood. So, although in the Sanford case a general rule of estoppel is stated, subject to exceptions, this in reality is but a reverse way of saying that a stockholder permitting his name to remain as the owner of stock after alienation thereof may be estopped from denying he is the *real owner,* dependent on facts

that in equity seal his lips. This we say because we may not wander from the fact that the stockholder's liability in this state arises solely out of section 9251. The words of that section are so simple and direct in imposing liability upon "all stockholders" that we cannot find therein a legislative intent to impose liabilty except upon the owners of the stock. The legislature having in no way indicated an intent to impose liability upon apparent stockholders, or to create a double liability upon actual stockholders and upon apparent stockholders, there is no warrant on our part to attempt to enlarge the statute. There may of course be such facts that an apparent stockholder may be estopped from denying he is the real owner. Such a case might be imagined where fraud and imposition upon the creditors of a bank have been accomplished by a financially responsible person designedly causing his name to remain on the bank's records as a stockholder liable for this statutory assessment when in truth he was not the real owner. Because the only liability within the terms of this statute is that imposed upon the owner of the stock, the thing that would have to be barred by estoppel, in order to create liability in such a case, would be the assertion by such designing person that he was not the actual owner. In no other manner could an estoppel bring the person estopped within the class of persons upon whom the statute imposes the liability. But estoppel to deny the liability of such person might well be affirmed upon general principles of law and equity. And because the application of such general principles would afford the litigant urging estoppel all the relief to which he might be entitled under section 9251, that is, the barring of the apparent stockholder from asserting that he was not the real owner, it follows that the so-called general rule of estoppel laid down in the Sanford case could accomplish nothing more or different, and must be viewed as being merely a manner of stating the general law of estoppel. Consequently in the case at bar plaintiff's right of recovery is dependent upon the facts, and consideration of the record leads to the conclusion that plaintiff did not establish the essential elements of estoppel. Defendant continued to be the apparent owner of the stock, but from that fact alone cannot be inferred the essential and well known elements of estoppel. Either these elements did not exist or plaintiff failed to bring the proof, and we are inclined to the first of these alternatives.

We come to the same conclusion as did the district court and the case is affirmed.—Affirmed.

HAMILTON, C. J., and MITCHELL, ANDERSON, PARSONS, KINTZINGER, and DONEGAN, JJ., concur.