BURDETTE L. BOWNE, and BURDETTE L. BOWNE, as Trustee, Appellants, v. W. B. BONNIFIELD et al., Appellees.

No. 44614.

APRIL 4, 1939.

REHEARING DENIED SEPTEMBER 22, 1939.

Gilmore, Moon & Bannister, for appellants.

Geo. F. Heindel, for appellees.

SAGER, J.—For convenience, plaintiffs will be spoken of in the singular, and the defendants, unless otherwise indicated,

as the bank. We find it unnecessary to deal at length with the proceedings which resulted in the consolidation of the First National with other banks, and this feature will have only incidental attention as we proceed.

The diligence and learning of counsel for the parties have invited us to examine a substantial portion of the field of equity jurisprudence; and while we have patiently inspected that part of the legal terrain pointed out to us, we find it unnecessary to set down here our observations as to most of the matters suggested. There is not, nor could there well be, much difference between the parties as to the rules of law applicable to cases of this kind. The difficulty has been in adjusting such principles to the facts before us. The proper outcome of this cause depends so much on fact propositions that we purposely refrain from discussing the many citations to which our attention is directed.

The defendant Bonnifield was the president, and Ackley, cashier of the First National Bank during the time the transactions involved herein occurred. Briefly stated, appellant contends that he dealt only with reference to what will be designated the "Haw" stock, and alleges that he had a right to rely upon the representations made to him as to the ownership of the stock he was to acquire; that no contract resulted when he, thinking he was dealing with A, finds that he has actually made a bargain with B; that the value of the stock was misrepresented; that the condition of the First National Bank (whose stock was the subject of the bargaining) was not as he was led to believe and that the stock was not worth what he was told it was. As incidental to, or perhaps implicit in these contentions, are appellants' arguments that the fact that Ackley, the cashier who negotiated the deal, acted in good faith, would not permit escape of the defendants; that when plaintiff borrowed the money to pay for this stock and the money so borrowed was deposited in the name of Bonnifield, whose stock was actually transferred to plaintiff, a trust was established for the owners of the Haw stock; that the bank was bound by the knowledge of Bonnifield and Ackley, its officers, and thereby became chargeable with the alleged fraud. To each and all of these propositions appellant cites authorities. These have been examined but, as said above, will not be analyzed here. It is apparent that, as abstract propositions of law, most of appellant's legal

contentions would be admitted. The trouble is that an examination of the record and the many exhibits certified to this court does not support the deduction of fact which plaintiff would draw therefrom. Among the many cases cited by appellant there is one (Bates v. First Trust & Savings Bank, 222 Iowa 407, 269 N. W. 437) which tends to support the claims made by the plaintiff, that a bargain with A, when a contract was supposed to be with B, results in no contract at all. But the facts in that case are so different from those before us that the language of that case is not controlling.

In the case before us the plaintiff, if the record does not belie him, is a keen business man of large experience. Not only have his transactions been large, but on the whole (this transaction being one of the exceptions) successful. He was for a long time a customer of the bank and borrowed frequently, his transactions running in figures of five thousand dollars to twenty thousand dollars and "probably more". He had been in the gas and electric business at Trenton, Missouri, for ten years; in the gas business at Morris, Illinois, for three or four years; and in the same business for three or four more years at Marshall, Michigan. At Ottumwa, where this controversy arose, he bought into an ice business, with such result that at the time of the trial he was operating four plants of that kind. He had dealt in a variety of corporation stocks, among them some of the character of that of John Morrell & Company and Cities Service, displaying on the whole an unusual degree of familiarity with this type of business transactions. He had dealt for a considerable time with the bank of which Ackley was cashier and a close friendship developed between them. The stock of the bank had consistently paid dividends and to all appearances was, at the time plaintiff bought the stock, a good investment.

There is some uncertainty in the record as to just how the negotiations looking to a transfer of stock were opened up but that is not important. Ackley says that the plaintiff wanted to buy stock generally, not particularly the Haw holdings; appellant makes a qualified denial. Plaintiff says that he was dealing only with reference to the Haw stock, and because Bonnifield sold him a part of his own holdings, that he (the plaintiff) was cheated. Plaintiff's contentions appear to us not supported by the record; or at least, at the time he acquired this stock, that he did not regard his purchase in the light he would have

us view it now. He accepted dividends on the stock, and the note which he now seeks to annul was a renewal of the note originally given. True, appellant says that he did not know at the time that he was not acquiring the Haw stock, but he signed receipts on the stock book which distinctly said that he was getting a part of the defendant Bonnifield's holdings. Plaintiff does not in terms deny this, but says that if Bonnifield's name was on the stock stubs he didn't see it. He seems to have been satisfied with the transaction until the effects of the merger of the First National with a number of other banks began to be manifest. And here seems to be the crux of the whole matter.

Ackley, the cashier, thus gave his reason for consenting to consolidation:

"I would say there was nothing in the condition of the First National at that time from which I could determine that the condition of the First National standing alone required any consolidation for the protection of its stockholders and depositors. The consolidation was the result of conditions in other banks and general financial conditions, rather than the condition of the First National."

As explaining the failure to detect the extent of the state official's personal interest in the transaction, the cashier says:

"It probably would have raised a question if I had seen this consolidated statement before the merger agreement was entered into, and my suspicions might have been aroused by the showing that the First National had deposits of a little less than $850,000.00, and Mr. Andrew's bank had deposits of a million and a half."

And further he has this to say:

"L. A. Andrew was urging upon all the banks the importance of very prompt action to avoid any difficulties which might arise because of some of the weaker banks. He said to me that his bank and its assets were all right and in good condition, and that an examiner would go over the assets of all the banks and would make one large sound bank with good assets. That was the reason I did not then insist on checking up in detail the assets of the various banks. It was because of that urging of Mr. Andrew that we made this consolidation so hurriedly, and

on his promise to have his chief examiner make a careful segregation of assets.

"In doing that we knew that shareholders of the First National were sacrificing somewhat of their values in the interest of the other banks and in the interest of the community and the banking situation in general. The First National was the best bank that went into the consolidation, and its shareholders did not receive any more per share in the new bank than the shareholders in all the other banks. I believe the First National could have taken care of itself without a consolidation, and would have been better off without the consolidation."

It should be said here that plaintiff, although consulted with reference to proposed consolidation, did not consent thereto. This took place in October 1931, but he made no complaint until October 1932. On the whole record, we are satisfied that the plaintiff with his experience in business matters was not defrauded. He made a bargain which in the light of subsequent events proved improvident, but we detect no element of fraud on the part of defendants.

Bonnifield had nothing to do with the making of the bargain beyond transferring a part of the stock held by him to the plaintiff. Ackley, the cashier, withheld no information asked for, nor dissuaded plaintiff in any way from making any investigation that he cared to make. He told the plaintiff how to read a bank statement and so far as we are able to discern from the record, made no attempt to mislead at any time. That Bonnifield used the money for the sale of his stock to the payment of his debts connotes nothing sinister. The claim that because the money was deposited in his name impressed it with a trust for the owners of the Haw stock does not appear to merit analysis or discussion; neither does the claim that the plaintiff was misled as to the value of the stock. The evidence justifies the conclusion that at the time he bought this stock, it was regarded as worth what he paid for it, and there is evidence (some of it perhaps incompetent) tending to show that others were bargaining for or holding stock of the same kind at the same or higher prices.

A consideration of the record satisfies us that the plaintiff understandingly made a bargain which in the turn of events proved to be a poor one. He was not ignorant or inexperienced

nor unfamiliar with the hazards of business. He says he had bought stock before and lost, and this seems to be another occasion on which he was unable to forecast the future. In any event, we find no evidence to warrant the belief that he was blindly led into buying stock that he had no thought of buying, nor that he signed a record he didn't see. Neither does it appear likely that in the business conditions then prevailing he was not aware of the difficulties which beset the banking business. On the whole, we are satisfied that the trial court reached the correct conclusion. The foregoing makes it unnecessary that we advert to the contentions of appellees, nor consider other questions proposed in argument.

The decree of the trial court being right should be, and it is, affirmed.—Affirmed.

HAMILTON, MILLER, OLIVER, BLISS, HALE, and STIGER, JJ., concur.